# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

⬭ 02-10182
Summary Calendar

SCHOPPA FAMILY, ETC., ET AL.,

Plaintiffs,

S.E. PODUSLO,

Plaintiff-Appellant,

VERSUS

JOEL KUPERSMITH, M.D.,
DEAN, TEXAS TECH UNIVERSITY HEALTH CENTER SCHOOL OF MEDICINE;
RANDOLPH SCHIFFER, M.D.,
CHAIRMAN, DEPARTMENT OF PSYCHIATRY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
⬭ 5:01-CV-085-C

November 26, 2002

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Shirley Poduslo, a professor at the School of Medicine at Texas Tech University Health Sciences Center ("TTUHSC"), was removed as Director of Basic Research in the Alzheimer's Institute, was denied access to the research laboratory and lost funding for laboratory supplies and a research technician. Along with more than 700 persons who had provided their own or deceased family members' DNA samples and/or brains to the Alzheimer's DNA Bank that she ran, Poduslo sued, in state court, Robert Schiffer, Chairman of the Department of Neuropsychiatry, and Joel Kupersmith, Dean of the School of Medicine, asserting several state law claims and claims under 42 U.S.C. § 1983 for violation of her First and Fourth Amendment rights and the Fourteenth Amendment's Due Process Clause. The district court remanded all state law claims and granted summary judgment for defendants on the constitutional claims. We affirm.

I.

Poduslo was hired in 1990 as a professor at TTUHSC. An October 3, 1989, letter from the Chairman of TTUHSC[2] noted his recommendation to the dean of the school that Poduslo be offered a tenured faculty position, be provided with laboratory space and a supply budget, and be given the title of Director of Basic Research in the Alzheimer's Institute ("Director of Research"). An October 18, 1989, letter from the Dean of the School of Medicine[3] offered Poduslo a tenured position with a starting salary of $66,000, plus moving expenses for personal items and professional equipment.

Poduslo accepted the position and was given laboratory space, a supply budget, and the title of Director of Research. She kept personally-owned equipment and supplies of considerable value in the laboratory. As Director of Research, she founded TTUHSC's Alzheimer's DNA Bank, a research repository of DNA samples and brains from thousands of Alzheimer's victims. On January 28, 2000, following a series of conflicts,[4] Schiffer and Kupersmith removed Poduslo as Director of Research and denied her unsupervised access to the laboratory.

II.

In their state petition, plaintiffs sought an injunction ordering defendants not to destroy DNA samples, brains, or medical records associated with the Alzheimer's DNA Bank. In the event defendants were unable or unwilling to allow Poduslo to continue genetic-based research as Director of Research, plaintiffs sought the return of their DNA samples and their deceased relatives' DNA samples and/or

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] The letter was from Joseph Green, then a professor and the chairman of TTUHSC.

[3] The letter was from Bernhard Mittemeyer, then the dean.

[4] The exact nature and cause of the conflicts is disputed, though we are bound, for purposes of this review, to accept Poduslo's characterization. It is undisputed that the conflicts culminated in Poduslo's halting all research two days before she was dismissed from the DNA Alzheimer's Bank.

2

brains.

Poduslo argued that defendants, acting under color of state law, deprived her "of a liberty interest without due process and violated her constitutional right of association and her First Amendment rights to academic freedom by their actions, all in violation of the First, Fourth and Fourteenth Amendments." Poduslo asserted that although she was a tenured full professor, the defendants removed her as Director of Research, limited her access to the laboratory and to charts, and instructed laboratory assistants not to talk to her on threat of termination. Poduslo sought compensation for the damage to her ability to research, the damage to her reputation, and the mental anguish caused by the defendants' actions.

After filing an answer setting forth the affirmative defense of qualified immunity, defendants removed to federal court, whereupon plaintiffs moved to remand. After remanding the state claims, the district court ordering Poduslo to file a reply to the invocation of qualified immunity, then granted defendants' motion for summary judgment.

The district court determined that Poduslo did not have a property interest in her job assignment as laboratory director, that the alleged conversion of her personal property did not violate her procedural due process rights because adequate state post-deprivation remedies existed, that the alleged conversion did not violate her substantive due process rights because she had presented no evidence that the deprivation was arbitrary or capricious, and that she had failed to overcome the qualified immunity defense because she had tendered no evidence that defendants had acted unreasonably. The court further concluded that defendants were entitled to qualified immunity with respect to Poduslo's liberty interest claims, because defendants did not deprive her of the right to pursue her occupation, the mere change in status did not violate her liberty interest in future employability, and, in any event, she was provided due process through the grievance procedure.

III.

A.

We review a summary judgment *de novo*, using the same standard applicable in the district court. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). "After consulting applicable law in order to ascertain the material factual issues, we consider the evidence bearing on the issues, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the nonmovant." *Id*. "Summary judgment is properly granted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id*. (quoting FED. R. CIV. P. 56(c)).

The doctrine of "[q]ualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional right of which a reasonable person would have known." *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999). We conduct a bifurcated analysis: "First, a court must determine whether the plaintiff has alleged the violation of a constitutional right." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Second, we decide whether "the conduct was objectively reasonable in light of

3

clearly established law at the time that the challenged conduct occurred." *Id*. "A right is 'clearly established' if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

B.

Poduslo contends that the district court erred in concluding that she has no civil rights remedy for the allegedly intentional and malicious seizure of her equipment and supplies kept in the laboratory.[5] She argues that the availability of state court remedies does not bar federal relief, because the conversion was not a random, unauthorized act, but a deliberate exercise of power by individuals who had lawful authority to exclude her from the premises and separate her from her property. She states that defendants are not entitled to qualified immunity, because they acted with deliberate indifference to her constitutionally protected interests.

1.

The *Parratt/Hudson* doctrine provides that when a § 1983 plaintiff alleges he has been deprived of property without due process of law by a state officer's random and unauthorized intentional conduct, rather than by an established state procedure, there is no infringement of procedural due process rights if there is an adequate state post-deprivation remedy. *See Cozzo*, 279 F.3d at 290. "The

doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996). If the state actors allegedly are acting in accord with official policy or customary procedures, the "random and unauthorized" criteria are not satisfied.[6]

Poduslo does not contend that the defendants were acting in accord with an official policy or customary procedure of converting personal property contained in the laboratory. The state could not have foreseen the unusual circumstances that led to defendants' allegedly intentional deprivation of Poduslo's personal property or the need for predeprivation process. Though the defendants had the authority to control access to the laboratory, their intentional conversion of Poduslo's private property was not authorized by the state. Because Poduslo has available to her an adequate postdeprivation remedySSa Texas state tort action for conversionSSher procedural due process claim was properly dismissed.

2.

Poduslo's allegations that the conversion of her property was malicious and a flagrant abuse of power also constitute a claim that she was deprived of her property without substantive due process. "This substantive

---

[5] Poduslo has failed to brief on appeal, and therefore has abandoned, her argument that she was deprived of her cell lines without due process. *See Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

[6] *See Alexander v. Ieyoub*, 62 F.3d 709, 713 (5th Cir. 1995) (concluding that the "allegation that the Defendants were acting in their customary manner of failing to timely institute a forfeiture proceeding negates the 'random and unauthorized conduct' element needed for application of the *Parratt/Hudson* doctrine").

4

component of the Fourteenth Amendment's Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *McClendon v. City of Columbia*, 305 F.3d 314, 322 n.5 (5th Cir. 2002) (en banc) (internal quotation marks and citations omitted).

Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence. The Supreme Court's discussions of abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense. The Court has spoken of the cognizable level of executive abuse of power as that which shocks the conscience. In elaborating on the constitutional concept of conscience shocking, the Court has made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

*Id.* at 326 (internal quotation marks and citations omitted).

Poduslo cites three incidents as evidencing the arbitrary deprivation of her property: (1) Defendants failed to return the property after she had detailed her property interests in her pleading responding to the qualified immunity defense; (2) defendants returned only some of her property upon her departure from TTUHSC; and (3) defendants deprived her of copies of her research notes and notebooks she had brought from her previous employment. Taken alone, these allegations might set forth a claim for arbitrary deprivation. Poduslo admits, however, that upon her departure from TTUHSC, defendants allowed her to take laboratory equipment for which she had serial numbers, and items plainly ancillary to that serial-numbered equipment.[7]

Defendants' retention of items for which Poduslo could not demonstrate ownership was reasonably related to the legitimate governmental interest of protecting state property. This conduct does not rise to the level of egregiousness required by our jurisprudence. Because Poduslo has failed to create a genuine issue of material fact regarding whether defendants arbitrarily deprived her of her laboratory equipment and supplies, the district court properly dismissed the substantive due process claim.

IV.

Poduslo asserts that the district court erred in determining that she was not constitutionally injured by the deprivation of her contractual employment rights. Poduslo argues that although there may not be economic value in her job title, she lost economic benefits when she was deprived of her supply budget, the support of a laboratory technician, and access to laboratory space. She contends that by depriving her of these economic benefits of her employment contract, defendants denied her the right to pursue her profession as a scientist.

---

[7] This admission comes in an affidavit filed with Polduslo's summary judgment response.

5

## A.

To prevail on a claim based on denial of procedural or substantive due process,[8] a plaintiff must make a showing that he has been denied a constitutionally protected property interest. *See Williams v. Texas Tech Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993); *Browning v. City of Odessa*, 990 F.2d 842, 844 (5th Cir. 1993). To enjoy a property interest in employment, an employee must "have a legitimate claim of entitlement," created and defined by "existing rules or understandings that stem from an independent source such as state law . . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Under Texas law, employment is at-will unless the employer "unequivocally indicate[s] a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). TTUHSC's policies expressly provide that the "[t]ermination of employment or dismissal of a tenured faculty member . . . will be only for cause." Because Poduslo was a tenured professor, she had a property interest in her continued employment with TTUHSC. See *Roth*, 408 U.S. at 576-77.

"An expectation of employment carries with it some protected expectations as to a salary." *Williams*, 6 F.3d at 293.

But the more detailed and conditional the understanding becomes between employer and employee, the weaker the linkage becomes between those understandings and the Due Process Clause. *See Mangaroo v. Nelson*, 864 F.2d 1202, 1206-08 (5th Cir. 1989). At some point the linkage is uncertain enough to justify qualified immunity for an official accused of breaking it.

*Id.* at 293-94.

## B.

Poduslo entered into evidence the October 3, 1989, letter from Green stating that he had recommended her appointment to a professorship, that he understood tenure would be requested for her, that her salary would be $66,000, that her moving expenses would be defrayed, and that she would be furnished a supply budget of $20,000, support for a technician, and renovated space for two contiguous laboratories. Poduslo also submitted the October 18, 1989, letter from the dean that offered her a tenured professorship and stated only that her starting salary would be $66,000 and that her moving costs would be paid.

The detailed and conditional October 3 letter provides only an uncertain link to the Due Process Clause. *Id.* at 293. It is apparent that the letter was tentative and not an actual offer of employment. Furthermore, it nowhere indicated that the protections of tenure, if ultimately granted to Poduslo, would extend to the supply budget, support for a technician, or access to laboratory space.[9]

---

[8] It is uncertain whether Poduslo asserts that she was deprived of a property interest without procedural due process or without substantive due process, or both.

[9] Poduslo held her position as Director of Research, and received the concomitant supply budget and laboratory space, for more than ten years. Even if the October 3 letter were construed as a promise to provide these accouterments, its

(continued...)

6

Finally, the loss of her title, supply budget, laboratory space, and support for a technician did not reduce her income.[10] Because Poduslo had no cognizable property interest in the supply budget, the support for a technician, or the access to laboratory space, she has no due process claim.[11]

---

[9](...continued)
promise certainly was fulfilled initially and did not extend indefinitely.

[10] In his affidavit, Kupersmith indicated that Poduslo's salary and stipend did not change as a result of her being removed as Director of Research, and that she maintained her position as a full professor with tenure. Poduslo does not challenge this assertion on appeal.

[11] Cf. Kinsey v. Salado Indep. Sch. Dist., 950 F. 2d 988, 997 (5th Cir. 1992) (en banc) (Plaintiff does not have "a constitutionally protected property interest in the non-economic benefit of serving as superintendent."); Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 754 (5th Cir. 1986), modified on other grounds, 491 U.S. 701 (1989) (stating that oral contract that did not address specific duties did not "create a property interest in the intangible, noneconomic benefits of his assignment as coach"); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (concluding that instructor demonstrated no property interest in teaching specific government classes where there was no contract guaranteeing the right to teach those classes and the new assignments were commensurate with her position).

Even if a property interest could be shown, it cannot be said, given the uncertainties underlying this aspect of Poduslo's employment relationship with TTUHSC, that the law clearly established that she had a constitutionally protected property interest in the supply budget, support for a technician, and access to laboratory space. See Williams, 6 F.3d at 294. Because reasonable
(continued...)

### C.

Poduslo claims she was deprived, without due process, of her liberty interest in pursuing her chosen profession because of the loss of her position as Director of Research.[12] "A person has a liberty interest in pursuing an occupation."[13] Poduslo, however, does not assert that defendants invoked any regulation to bar her from all other public employment in state universities or somehow deprived her of a license to pursue her career as a scientist. See Roth, 408 U.S. at 573-74; Connelly v. Comptroller of the Currency, 876 F.2d 1209, 1214 (5th Cir. 1989). Her allegations do not rise to the level required to implicate a liberty interest in employment.

AFFIRMED.

---

[11](...continued)
administrators could have concluded, without treading on ground plainly protected by the Constitution, that Poduslo could be denied these employment benefits, defendants would be entitled to qualified immunity on this claim.

[12] In the district court, Poduslo also based her liberty interest claim on alleged damage to her reputation and stigmatization that hindered her future employability. She has not raised this as a basis in this appeal. See Yohey, 985 F.2d at 224-25 (noting that claims not asserted on appeal are abandoned).

[13] Phillips v. Vandygriff, 711 F.2d 1217, 1222 (5th Cir. 1983) (citing authorities), modified in other part on rehearing, 724 F.2d 490 (5th Cir. 1984); see also Martin v. Mem. Hosp., 130 F.3d 1143, 1148 (5th Cir. 1997).