361 F.3d 562
 Stephen EMBURY, Plaintiff-Appellee,
v.
Talmadge E. KING, Jr., in his individual and official capacity; Lee Goldman, in his individual and official capacity; J. Michael Bishop, in his individual and official capacity; Regents of the University of California, a public corporation, Defendants-Appellants.
 No. 02-15030.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 12, 2003.
 Filed March 16, 2004.
 As Amended May 17, 2004.
 
 Susan T. Kumagai (briefed) and Gary T. Lafayette (argued), Lafayette & Kumagai, LLP, San Francisco, CA, for appellant Regents of the University of California.
 Fred M. Blum, Bassi, Martini & Blum, LLP, San Francisco, CA, Andrew Thomas Sinclair, Sinclair Law Office, Oakland, CA, for the appellee.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding, D.C. No. CV-01-01448-CW.
 Before CANBY, JR., KLEINFELD, and RAWLINSON, Circuit Judges.
 OPINION
 KLEINFELD, Circuit Judge.
 
 
 1
 We determine here the breadth of a state's waiver of Eleventh Amendment immunity when it removes a case from state to federal court.
 
 Procedural History
 
 2
 Stephen Embury, a physician, sued the Regents of the University of California (the "Regents" or the "State") and several individuals in December 2000 in the Superior Court of the State of California, and simultaneously in the United States District Court for the Northern District of California, for wrongful discharge from employment, in violation of his due process rights under the federal and state constitutions, and in violation of state labor law. Embury never served the complaints on any of the defendants.
 
 
 3
 In March 2001, Embury filed an amended complaint in state court, demanding declaratory and injunctive relief for the Regents' violation of his federal and state due process rights, in addition to damages for his state law claims of violation of public policy and breach of contract. This complaint was served on each of the defendants. One month later, in April, all of the defendants joined in removing the state superior court case to federal court.[1] Defendants moved to dismiss for failure to state a claim upon which relief could be granted, but did not assert Eleventh Amendment immunity as a ground for dismissal. The motion was granted in July, with leave to amend. Embury promptly filed an amended complaint, asserting federal and state law claims for damages, declaratory relief, and injunctive relief. The defendants again moved to dismiss, this time arguing Eleventh Amendment immunity.
 
 
 4
 At the hearing on the second motion to dismiss, held on October 26, 2001, the State of California was unsure whether it was claiming Eleventh Amendment immunity on the whole case, or just on some claims. The judge ordered the State to declare its position: "You are going to need to make it clear whether you're seeking immunity as to state and federal claims or only federal claims. And if you're seeking as to state claims, what your proposal is as far as how they be adjudicated." Defense counsel replied, "Could I do that after I speak to my client?" The court consented. In November, defense counsel informed the court that the Regents would be asserting Eleventh Amendment immunity with respect to all claims.
 
 
 5
 The district court denied the motion to dismiss, holding that, although the Regents, as an instrumentality of the State of California, were immune from suit for damages in federal court, the defense had been waived by defendants' action in removing the case from state court to federal court. The court opined that "[t]his case exemplifies the risks of `improper manipulation of the judicial process' that informed the Ninth Circuit's decision in Hill [v. Blind Industries and Services of Maryland],[2] and Justice Kennedy's [Wisconsin Department of Corrections v.] Schacht[3] concurrence." Hill and the Schacht concurrence both pointed out that removal is of the "case," and not just of certain claims.
 
 
 6
 The district judge emphasized that the court had exercised jurisdiction over the case "for eight months. It ha[d] digested considerable briefing on both the State and federal claims in the complaint, twice heard oral argument and adjudicated two motions to dismiss," much of which would be repeated in state court if the state claims were remanded, to the prejudice of plaintiffs and of both courts. Accusing defendants of "gamesmanship," the judge noted in her written decision that "it was only after the Court informed Defendants at both the July 6, 2001 and the October 26, 2001 hearings on their motions to dismiss that it was not disposed to grant the motion with regard to the State law claims, that Defendant Regents invoked immunity as to all claims." She therefore denied the motion to dismiss and the motion to remand.
 
 
 7
 The Regents filed this interlocutory appeal of the denial of their motion to dismiss or remand on the ground of Eleventh Amendment immunity.[4] We conclude that the district court was right.
 
 Analysis
 
 8
 The district court's analysis was vindicated by the subsequent decision of the United States Supreme Court in Lapides v. Board of Regents of University System of Georgia.[5] As in the case at bar, a professor sued his university, an instrumentality of the state, in state court on both federal and state law theories. The university removed the case to federal court and then sought dismissal based on Eleventh Amendment immunity.[6] The Court held, in a unanimous opinion, that removing the case from state to federal court was affirmative litigation conduct by which the state waived its Eleventh Amendment immunity. The Court reasoned that it was inconsistent for the state to invoke federal jurisdiction by removal, thereby contending that the judicial power of the United States extended to the case, yet claim that jurisdiction did not extend to the case because of the Eleventh Amendment.[7] A benign motive, as opposed to the seeking of tactical advantage, could not save the state from its waiver. The Court stated the clear rule that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum."[8]
 
 
 9
 The Regents concede that, under Lapides, they are stuck with federal jurisdiction over the state law claims Embury asserts, but they argue that his federal claims should nevertheless be dismissed pursuant to the State's Eleventh Amendment immunity. The argument is not frivolous, because the Court in Lapides was careful to note that it spoke only to the state law claims in that case, the federal claims being invalid for reasons other than Eleventh Amendment immunity.[9] But the argument is nevertheless without convincing force. We conclude that the rule in Lapides applies to federal claims as well as to state law claims and to claims asserted after removal as well as to those asserted before removal. By removing the case to federal court, the State waived its Eleventh Amendment immunity from suit in federal court. Nothing in the reasoning of Lapides supports limiting the waiver to the claims asserted in the original complaint, or to state law claims only. Indeed, it makes no sense that the State does not object to having state law questions resolved by a federal tribunal — where federal jurisdiction cannot even be obtained but for federal claims asserted in the same case — yet objects to federal jurisdiction over the federal claims. As for timing of the claims, the State removed the case, not the claims, and like all cases in federal court, it became subject to liberal amendment of the complaint.
 
 
 10
 The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States."[10] This language speaks, not to immunity from claims, but to federal jurisdiction over "any suit." Likewise, removal is not of a claim, but of the "case,"[11] which is to say, the "suit." The Regents argue that the complaint was amended after they removed the case, so that at the time of removal they did not know of all the claims they were handing over to federal court for disposition. Amendment of a complaint does not affect a waiver, by removal, of Eleventh Amendment immunity. The reason is that, by removing, the State affirmatively invoked "[t]he Judicial power of the United States" over the "suit," not just the claims that had already been made.[12] Lapides explains that the State, by removing the case, "voluntarily agreed to remove the case to federal court. In doing so, it voluntarily invoked the federal court's jurisdiction."[13] The Supreme Court characterized the Lapides rule this way: "[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter."[14] The use of the terms "case" and "matter" in Lapides suggests that the federal court's power extends, once immunity is waived, to the entire case, consistent with Article III's grant of power to decide "Cases."[15]
 
 
 11
 Cases from the Federal Circuit and the Tenth Circuit support the conclusion we reach today. In In re Regents of University of California, California had waived Eleventh Amendment immunity, but asserted it had done so only as to the venue of the Northern District of California, claiming immunity when the case was later consolidated with others elsewhere as part of a multi-district litigation.[16] The Federal Circuit held: "Upon entering the litigation arena the Regents, like all litigants, become subject to the Federal Rules.... Having invoked the jurisdiction of the federal court, the state accepted the authority of the court."[17] In Estes v. Wyoming Department of Transportation, the Tenth Circuit held that when a state removes a case that includes both state law and federal law claims to federal court, it waives Eleventh Amendment immunity for both classes of claims, not just the state law claims.[18]
 
 
 12
 Estes noted that, under Lapides, a state's motive for removing the case does not matter.[19] We agree. The district court was quite correct that, in the circumstances of this case, allowing the reassertion of Eleventh Amendment immunity, after the State had litigated extensively in federal court but began to anticipate an unfavorable outcome, would waste the time and money of the litigants and the resources of the courts. But even without that circumstance, removal itself affirmatively invokes federal judicial authority and therefore waives Eleventh Amendment immunity from subsequent exercise of that judicial authority, in this case over claims added in the amended complaint.[20] The removal is the waiver, regardless of whether, as in Hill v. Blind Industries, the waiver could also have been effected by subsequent events.[21] Allowing a State to waive immunity to remove a case to federal court, then "unwaive" it to assert that the federal court could not act, would create a new definition of chutzpah.[22] We decline to give the State such unlimited leeway, and instead hold to a straightforward, easy-to-administer rule in accord with Lapides: Removal waives Eleventh Amendment immunity.[23]
 
 
 13
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 See 28 U.S.C. § 1446(a); Chicago, Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900) (consent of all defendants required for removal).
 
 
 [2]
 Hill v. Blind Indus. and Servs. of Md., 179 F.3d 754 (9th Cir.1999).
 
 
 [3]
 Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).
 
 
 [4]
 See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc. 506 U.S. 139, 147, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (permitting interlocutory appeal).
 
 
 [5]
 Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).
 
 
 [6]
 Id. at 616-17, 122 S.Ct. 1640.
 
 
 [7]
 Id. at 619, 122 S.Ct. 1640.
 
 
 [8]
 Id. at 624, 122 S.Ct. 1640.
 
 
 [9]
 Id. at 617-18, 122 S.Ct. 1640.
 
 
 [10]
 U.S. Const. amend. XI
 
 
 [11]
 See 28 U.S.C. §§ 1441(c), 1446(b), 1447.
 
 
 [12]
 U.S. Const. amend. XI;cf. Schulman v. California (In re Lazar), 237 F.3d 967, 978 (9th Cir.2001) (holding that when a state files a proof of claim, Eleventh Amendment immunity is waived in a bankruptcy proceeding as to all claims that arise from the same transaction or occurrence as the state's claim).
 
 
 [13]
 Lapides, 535 U.S. at 620, 122 S.Ct. 1640 (emphasis added) (citations omitted).
 
 
 [14]
 Id. at 624, 122 S.Ct. 1640 (emphasis added).
 
 
 [15]
 U.S. Const. art. III, § 2
 
 
 [16]
 In re Regents of Univ. of Cal., 964 F.2d 1128, 1134 (Fed.Cir.1992).
 
 
 [17]
 Id. at 1135.
 
 
 [18]
 Estes v. Wyo. Dep't of Transp., 302 F.3d 1200, 1204-06 (10th Cir.2002).
 
 
 [19]
 Id. at 1204.
 
 
 [20]
 This is not a case where Congress acted beyond its limited power over the States,see, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (holding that application of the Americans with Disabilities Act to the States exceeds Congress's power under § 5 of the Fourteenth Amendment); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 66-67, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (holding the same for the Age Discrimination in Employment Act); Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 47, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (holding that Congress cannot abrogate the States' Eleventh Amendment immunity using Article I powers), so we need not decide whether a removing State defendant remains immunized from federal claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity.
 
 
 [21]
 Hill, 179 F.3d at 756 (holding that "actively litigating [an] action on the merits," yet waiting, in an attempt to "hedge[] its bet," until the first day of trial to assert Eleventh Amendment immunity constituted waiver).
 
 
 [22]
 "The classic definition ofchutzpa is, of course, this:
 Chutzpa is that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan."
 Leo Rosten, The Joys of Yiddish 94 (1971).
 
 
 [23]
 Lapides, 535 U.S. at 623-24, 122 S.Ct. 1640 ("[W]e believe the rule is a clear one, easily applied by both federal courts and the States themselves.").