

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-2008

# Lombardo v. Comm of PA Welfare

Precedential or Non-Precedential: Precedential

Docket No. 06-4628

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lombardo v. Comm of PA Welfare" (2008). *2008 Decisions.* Paper 573.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/573

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4628
_____

MICHAEL A. LOMBARDO

v.

COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT
OF PUBLIC WELFARE; ESTELLE RICHMAN, Secretary of
the Department of Public Welfare, in her official capacity,

Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 06-cv-00732)
District Judge:  Honorable William J. Nealon

Argued October 24, 2007

Before: SLOVITER, CHAGARES, and HARDIMAN, <u>Circuit
Judges</u>.

_____

(Filed: August 25, 2008)

Thomas W. Corbett, Jr.
John G. Knorr, III (Argued)
Maryanne M. Lewis
Office of the Attorney General of Pennsylvania
Department of Justice
Strawberry Square

Harrisburg, PA 17120

Counsel for Appellants


Kimberly D. Borland (Argued)
Borland & Borland, L.L.P.
69 Public Square 11th Floor
Wilkes Barre, PA 18701

Counsel for Appellee


_____

OPINION OF THE COURT
_____


CHAGARES, Circuit Judge.

This case requires the Court to consider the contours of state sovereign immunity and under what circumstances such immunity may be waived.

Alleging violations of both federal and state anti-discrimination laws, Michael A. Lombardo (Lombardo) filed an employment discrimination complaint in the Court of Common Pleas of Luzerne County against the Commonwealth of Pennsylvania's Department of Public Welfare and its Secretary, Estelle Richardson, in her official capacity (collectively, the Commonwealth). Based on the federal claim, the Commonwealth removed the complaint to the United States District Court for the Middle District of Pennsylvania and sought partial dismissal on sovereign immunity grounds. The parties acknowledge that Pennsylvania has not statutorily waived its sovereign immunity for claims brought under the federal statute at issue, and they agree that the central question in this appeal is whether the Commonwealth waived such immunity by voluntarily removing this matter from state to federal court.

2

The District Court denied the Commonwealth's motion to dismiss, reasoning that the Commonwealth waived its Eleventh Amendment immunity by removing the case. We agree that the Commonwealth's voluntary removal unequivocally invoked the jurisdiction of the federal courts and thereby waived the Commonwealth's Eleventh Amendment immunity from suit in a federal forum.

We hold, however, that state sovereign immunity includes both immunity from suit in federal court and immunity from liability, and that a State may waive one without waiving the other. Because the Commonwealth's removal did not waive its immunity from liability, we will reverse the judgment of the District Court and remand with instructions to grant the Commonwealth's motion for partial dismissal.

## I.

Lombardo worked at the White Haven Center, a state-operated facility for the developmentally disabled located in White Haven, Pennsylvania, for more than 38 years. In 2003, Lombardo was passed over for a promotion. Lombardo, 61 years old at the time, believed that this action was due to his age. On March 23, 2006, he filed a complaint asserting two grounds for relief: violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634; and violation of the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. §§ 951-963. Lombardo sought equitable relief and damages.

On April 7, 2006, based on the ADEA claim, the Pennsylvania Department of Public Welfare (the Department) removed the case to the United States District Court for the Middle District of Pennsylvania and moved for dismissal. Lombardo then amended his complaint to add a second defendant – the Secretary of Public Welfare, Estelle Richardson, in her official capacity. The Commonwealth moved for partial dismissal of the amended complaint on the ground that its Eleventh Amendment immunity barred Lombardo's claims under the ADEA, save for his claim for

3

prospective injunctive relief against the Secretary.[1] The District Court denied the motion to dismiss, holding that the Commonwealth's voluntary removal of the case to federal court waived its Eleventh Amendment immunity under Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613 (2002), even though Pennsylvania has not consented to suit or waived immunity under the ADEA in its own courts. This appeal followed.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Defendants appeal from the District Court's order denying a claim of sovereign immunity by the Department, a state agency. We have subject matter jurisdiction under 28 U.S.C. § 1291, as such orders are immediately appealable under the collateral order doctrine. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993). This Court exercises plenary review over an order denying a motion to dismiss based on sovereign immunity. M.A. ex rel. E.S. v. State-Operated Sch. Dist. of the City of Newark, 344 F.3d 335, 344 (3d Cir. 2003).

## III.

Our Constitution established a system of "dual sovereignty between the States and the Federal Government," Gregory v. Ashcroft, 501 U.S. 452, 457 (1991), in which the States "retain 'a residuary and inviolable sovereignty.'" Alden v. Maine, 527 U.S.

---

[1] The Commonwealth also moved to dismiss the PHRA claim on a statute of limitations ground. The District Court denied the motion, holding that this issue turned on questions of fact which could not be resolved in the context of a motion to dismiss. That holding is not before this Court, and the Commonwealth did not assert immunity as to Lombardo's PHRA claim.

4

706, 715 (1999) (quoting The Federalist No. 39) (James Madison); see Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 71 n.15 (1996) (acknowledging that "[t]he Constitution specifically recognizes the States as sovereign entities"). An important feature of this sovereignty is state sovereign immunity. See Puerto Rico Aqueduct, 506 U.S. at 146 (stating that "the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity"). The Supreme Court has described sovereign immunity "as based 'on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.'" Nevada v. Hall, 440 U.S. 410, 416 (1979) (quoting Kawananakoa v. Polyblank, 205 U.S. 349, 353 (1907)).

\* \* \* \* \*

For the reasons that follow, we hold that state sovereign immunity is not a unitary concept. We can discern two distinct types of state sovereign immunity: immunity from suit in federal court and immunity from liability.

A.

The immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty. N. Ins. Co. of N.Y. v. Chatham County, 547 U.S. 189, 193 (2006); see Alden, 527 U.S. at 718 (noting John Marshall's comment at the Virginia ratifying convention that "'I hope no gentleman will think that a state will be called at the bar of the federal court'") (quoting 3 Debates on the Federal Constitution 555 (J. Elliot 2d ed. 1854)). The Supreme Court has explained that "[t]he founding generation thought it 'neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons.'" Alden, 527 U.S. at 748 (quoting In re Ayers, 123 U.S. 443, 505 (1887)).

Only five years after the adoption of the Constitution, however, the Supreme Court in Chisholm v. Georgia, 2 U.S. (2 Dall.) 419 (1793), determined that the state-citizen diversity clause

of Article III of the Constitution subjected the States to federal court jurisdiction. This holding led directly to the expeditious adoption of the Eleventh Amendment, which provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In Hans v. Louisiana, 134 U.S. 1 (1890), the Supreme Court extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court.

Accordingly, it is clear that the States possess immunity from suit in the federal courts, also known as Eleventh Amendment immunity.

B.

The Supreme Court has also recognized, however, that "the Eleventh Amendment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 753 (2002); see id. (stating that the Eleventh Amendment does not "explicitly memorializ[e] the full breadth of the sovereign immunity retained by the States when the Constitution was ratified"). Consequently, "the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." Id. at 754; see Alden, 527 U.S. at 713 (observing that the phrase "Eleventh Amendment immunity" "is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment"). State sovereign immunity thus comprises more than just immunity from suit in federal court. It also includes a State's immunity from liability. See Fed. Mar. Comm'n, 535 U.S. at 766 ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability."); Dellmuth v. Muth, 491 U.S. 223, 229 (1989) (declining to overrule the "longstanding holding" of Hans that "an unconsenting State is

6

immune from liability for damages in a suit brought in federal court by one of its own citizens"); Edelman v. Jordan, 415 U.S. 651, 662-64 (1974) (characterizing state sovereign immunity as safeguarding States against both "suits" and "liability").

We look to state law to determine if the Commonwealth maintains a separate immunity from liability. Under Pennsylvania law, the Commonwealth enjoys sovereign immunity unless the General Assembly "specifically waives sovereign immunity." 1 Pa. Cons. Stat. § 2310. The state assembly has not specifically waived immunity for ADEA violations, nor are such violations included in the statutory exceptions to sovereign immunity. See 42 Pa. Cons. Stat. § 8522 (listing "acts by a Commonwealth party" that "may result in the imposition of liability on the Commonwealth" for which "the defense of sovereign immunity shall not be raised to claims for damages"); see also Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000) (acknowledging that, with the exception of the tort claims for damages in state court listed in § 8522, "the Commonwealth's immunity is otherwise intact").

As a result, we conclude that the Commonwealth possesses immunity from liability regarding claims under the ADEA.

IV.

We now turn to whether, in this case, the Commonwealth has waived: (1) its immunity from suit in federal court; or (2) its immunity from liability.

A.

A State's immunity from suit is not absolute. Congress may abrogate a State's sovereign immunity "in the exercise of its power to enforce the Fourteenth Amendment,"[2] and a State may consent

---

[2] For Congress to "authorize a suit in the exercise of its power to enforce" Article I, § 5 of the Fourteenth Amendment, Congress "must identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct." Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S.

to suit by making a clear declaration that it intends to submit itself to federal court jurisdiction.[3]  Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 676 (1999).

Furthermore, a State may waive its immunity from suit by invoking federal court jurisdiction voluntarily.  Id. at 675.  The voluntary invocation principle emerged in early Supreme Court jurisprudence and was later examined in Lapides.  See Gardner v. New Jersey, 329 U.S. 565 (1947) (finding waiver of Eleventh Amendment immunity where a State voluntarily appeared in bankruptcy court to file a claim against a common fund); Gunter v. Atl. Coast Line R.R. Co., 200 U.S. 273, 284 (1906) (stating generally that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment"); Clark v. Barnard, 108 U.S. 436 (1883) (holding that a State's voluntary intervention in a federal court action to assert its own claim constituted a waiver of its Eleventh Amendment immunity).  Lombardo argues that the Commonwealth waived its immunity from suit in federal court "by voluntarily removing this matter from state to federal court."  Appellee Br. at 9.  We agree.

We begin with the facts of Lapides.  In 2001, Paul Lapides, a professor employed by the Georgia state university system, filed an action against the university system's Board of Regents in state court.  Georgia had already consented to suit in its own courts

627, 639 (1999).  While the ADEA does contain a clear congressional statement of intent to abrogate the States' immunity, this abrogation exceeded Congress' § 5 powers.  See Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000).  Thus, the ADEA "d[oes] not validly abrogate the States' sovereign immunity to suits by private individuals."  Id. at 91.

[3]     Pennsylvania has withheld its consent to suit in federal court.  42 Pa. Cons. Stat. § 8521(b).  See Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).

regarding the type of claims Lapides brought. Georgia's Attorney General removed the case to federal district court and sought dismissal on Eleventh Amendment grounds. The Supreme Court held unanimously that Georgia's removal from state to federal court waived its Eleventh Amendment immunity, but limited its holding "to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." 535 U.S. at 617. The Court did not rule on whether voluntary removal affected immunity from federal law claims, as Lapides' only federal claim against Georgia arose under 42 U.S.C. § 1983 and had to be dismissed, since a State is not a "person" against whom a § 1983 claim for money damages may be asserted. Id.

Despite expressly limiting its holding to state-law claims from which immunity has been explicitly waived, the Lapides Court utilized broad language regarding waiver and removal. First, the Court referenced the "general principle" that immunity is waived where a State voluntarily invokes a federal court's jurisdiction. 535 U.S. at 620. The Court concluded that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum," id. at 624, explaining that "[a] rule of federal law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness." Id. at 623. Georgia's allegedly "benign" motive for removal[4] did not influence the Court's decision, since "adopt[ing] [Georgia's] Eleventh Amendment position would permit States to achieve unfair tactical advantages, if not in this case, then in others." Id. at 621.

Applying these principles to the matter at hand, we conclude

_____

[4] Georgia claimed that it agreed to remove in order to provide its co-defendants, the officials sued in their personal capacities, with the "generous interlocutory appeal provisions" available only in federal court. Lapides, 535 U.S. at 621. Defendants have not proffered an explanation for removing this case to federal court.

9

that the Commonwealth waived its Eleventh Amendment immunity from private suit in a federal forum when it voluntarily removed this case to federal court.[5]  When a State, facing suit in its own courts, purposefully requests a federal forum, it expresses a clear intent to waive immunity from suit.  While Lapides limited its holding to state-law claims for which immunity was waived in state court, it also teaches that, generally, "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum."  535 U.S. at 1646.

In Estes, the Court of Appeals for the Tenth Circuit held that a State's removal to federal court of a case including both state law and federal law claims constituted a waiver of Eleventh Amendment immunity for both categories of claims.  302 F.3d at 1204-06.  Similarly, in Embury, the Court of Appeals for the Ninth Circuit determined that the waiver-by-removal rule established in

---

[5]    Since 2002, several appeals courts have addressed the scope of Lapides' waiver-by-removal rule.  The Courts of Appeals for the Ninth and Tenth Circuits have taken a broad view, extending the rule to all state and federal claims.  See Embury v. King, 361 F.3d 562 (9th Cir. 2004); Estes v. Wyo. Dep't of Transp., 302 F.3d 1200 (10th Cir. 2002).  The Courts of Appeals for the Fourth, Seventh, and District of Columbia Circuits limit the waiver principle to cases in which a State would obtain an unfair advantage by enjoying immunity in federal court that it would not have otherwise commanded in state court.  See Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005); Omosegbon v. Wells, 335 F.3d 668 (7th Cir. 2003); Watters v. Washington Metro. Transit Auth., 295 F.3d 36 (D.C. Cir. 2002).  The Court of Appeals for the Fifth Circuit has distinguished between immunity from suit and immunity from liability, Meyers ex rel. Benzing v. Texas, 410 F.3d 236 (5th Cir. 2006), reh'g and reh'g en banc denied, 454 F.3d 503 (5th Cir. 2006), and the Court of Appeals for the First Circuit favors an analogous theory.  See New Hampshire v. Ramsey, 366 F.3d 1 (1st Cir. 2004); Rhode Island Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31 (1st Cir. 2002).

Lapides applied to both state and federal claims, as well as to claims asserted after removal. 361 F.3d at 564. The Embury court observed that "[n]othing in the reasoning of Lapides supports limiting the waiver to . . . state law claims only," as it would be illogical for a State to consent to having state law questions determined by a federal court "where federal jurisdiction cannot even be obtained but for federal claims asserted in the same case," yet oppose federal jurisdiction over those federal claims. Id. We agree.[6]

We hold that the Commonwealth's removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court. Our holding today does not affect a State's ability to raise sovereign immunity when it is involuntarily brought into federal court. It is only when a State removes federal-law claims

---

[6] While not determinative in Lapides or in the case at hand, we note that the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction. Like subject matter jurisdiction, the Court permits an Eleventh Amendment immunity claim to be raised for the first time on appeal. See Edelman, 415 U.S. at 677-78. But the ability of States to waive their immunity or consent to suit, and the lack of a requirement that federal courts raise Eleventh Amendment immunity defects sua sponte, may resemble personal jurisdiction requirements. See, e.g., Erwin Chemerinsky, Federal Jurisdiction § 7.1 (4th ed. 2003) (describing sovereign immunity as a limit on federal judicial power and noting that "[t]he Supreme Court . . . has not been completely consistent in treating the Eleventh Amendment as a restriction on subject matter jurisdiction"); Eric S. Johnson, Note, Unsheathing Alexander's Sword: Lapides v. Board of Regents of the University System of Georgia, 51 Am. U. L. Rev. 1051, 1060-62 (2002) (arguing that personal jurisdiction-like features of Eleventh Amendment immunity undermine the Supreme Court's assumption that Eleventh Amendment immunity rests on subject matter jurisdiction); cf. Wis. Dep't of Corr. v. Schact, 524 U.S. 381, 393-98 (1998) (Kennedy, J., concurring) (suggesting tying the Eleventh Amendment to the Court's personal jurisdiction jurisprudence).

from state court to a federal forum that it "submits its rights for judicial determination," Gunter, 290 U.S. at 284, and unequivocally invokes the jurisdiction of the federal courts.

B.

As stated previously, the Commonwealth possesses immunity from liability under 1 Pa. Cons. Stat. § 2310, save for certain specifically enumerated tort claims for damages in state court. See 42 Pa. Const. Stat. § 8522. The question we now consider is whether the Commonwealth nonetheless waived its immunity from liability by removing this case to federal court.[7]

A State may waive its immunity from liability, but such a waiver must be express and unequivocal. See Coll. Sav. Bank, 527 U.S. at 680; Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). The Supreme Court has noted that an effective waiver of sovereign immunity, like the waiver of other Constitutionally-protected rights, must involve the "'intentional relinquishment or abandonment of a known right. . . .'" Coll. Sav. Bank, 527 U.S. at 682 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Accordingly, we must "indulge every reasonable presumption against waiver." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937).

---

[7] Lombardo asserts that the Commonwealth has waived this claim, since it did not raise the matter in the District Court. Appellee Br. at 18. See Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006) ("Generally, failure to raise an issue in the District Court results in its waiver on appeal."). Lombardo's argument fails because the issue was indeed before the District Court, despite the fact that the court did not specifically address various aspects of state sovereign immunity. In any event, issues of state sovereign immunity may be raised at any time, including "for the first time on appeal even if the state defended the merits of the suit in the district court." Chittister, 226 F.3d at 227 (citing Edelman, 415 U.S. at 677-78).

12

We hold that while voluntary removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability.[8] The Supreme Court

[8] We have determined that a removing State waives its Eleventh Amendment immunity from suit in a federal forum but retains its immunity from liability. Several courts of appeals have differed in the label given to the immunity retained by a removing State, separate and apart from the Eleventh Amendment. See Meyers, 410 F.3d at 250, 252-53 (rejecting the theory that state sovereign immunity is comprised of two separate immunities from suit–inherent immunity from private suit which may be asserted in any court and Eleventh Amendment forum immunity from suit in federal court–and concluding that a State "enjoys two kinds of immunity that it may choose to waive or retain separately–immunity from suit and immunity from liability"); Stewart, 393 F.3d at 487-88 (distinguishing the "related but not identical" concepts of Eleventh Amendment immunity and state sovereign immunity and defining the former as "but an example" of the latter "as it applies to suits filed in federal court against unconsenting States by citizens of other states"); Ramsey, 266 F.3d at 15 (discussing "two independent aspects of immunity from suit: immunity from suit in a federal forum . . . and substantive immunity from liability," noting that "a state may waive its immunity from substantive liability without waiving its immunity from suit in a federal forum," and assuming, arguendo, that a State may waive federal forum immunity without waiving substantive liability since the Supreme Court "thus far has not addressed" the issue); Omosegbon, 335 F.3d at 671 (referring to state sovereign immunity law and holding that since Indiana state immunity rules would have allowed a state court to hear the plaintiff's state-law contract claims, a federal court could do the same where the State removed the case to federal court); Watters, 295 F.3d at 42 n.13 (holding that the Washington Metropolitan Transit Authority (WMATA), an entity created by an interstate compact between the District of Columbia, Maryland, and Virginia, and the recipient of the respective sovereign immunity of each signatory, retained immunity upon its removal to federal court of an action to enforce an attorney's lien and stating that "[a]s the WMATA signatories

13

has suggested that a State may waive its immunity from liability without waiving its immunity from suit in federal court, see Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985), superseded in other respects by Civil Rights Remedies Equalization Amendment of 1986, 42 U.S.C. § 2000d-7; Great N. Ins. Co. v. Read, 322 U.S. 47, 54 (1943), and we see no reason to prohibit the inverse.  See, e.g., Meyers, 410 F.3d at 252-53 (concluding that state sovereign immunity is comprised of two separate and distinct kinds of immunity:  immunity from suit and immunity from liability; that a State's "waiver of one does not affect its enjoyment of the other"; and that immunity from liability is not encompassed within a State's immunity from suit); Ramsey, 366 F.3d at 15 (stating, in dictum, that "a state may waive its immunity from substantive liability without waiving its immunity from suit in a federal forum"); Jonathan R. Siegel, Waivers of State Sovereign Immunity and the Ideology of the Eleventh Amendment, 52 Duke L.J. 1167, 1234 (2003) (explaining that "state sovereign immunity has two independent aspects:  it is partly an immunity from suit in a particular forum (federal court) and partly a substantive immunity from liability," and "removal should be understood to waive only forum immunity"); see also Bolden v. Southeastern Pa. Transp. Auth., 953 F.2d 807, 831 (3d Cir. 1991) (Greenberg, J., dissenting) (noting that a State "can enjoy state sovereign immunity protection and yet not enjoy Eleventh Amendment immunity"); cf. Carlos Manuel Vazquez, Sovereign Immunity, Due Process, and The Alden Trilogy, 109 Yale L.J. 1927, 1930 (2000) (asserting that the Court in Alden and College Savings "rejected the 'forum-allocation' interpretation of the Eleventh Amendment, and

---

have not waived immunity from attorney's liens in their own courts, the narrow holding of Lapides does not apply to this case"). We utilize the term "immunity from liability," as this concept is consistent with Lapides in that it prohibits a State from claiming immunity from suit twice in the same case.  It also best represents our view that while a removing State invokes federal jurisdiction and waives its immunity from suit in a federal forum, such waiver does not prevent the State from asserting state sovereign immunity as provided for by its own law as a defense in federal court.

implicitly adopted . . . the 'immunity from liability' interpretation, under which the states are immune from being subjected to damage liability to individuals") (referencing Carlos Manual Vazquez, What is Eleventh Amendment Immunity?, 106 Yale L.J. 1683, 1700-08 (1997) (characterizing the "forum-allocation" and "immunity from liability" interpretations of Eleventh Amendment immunity)).

## C.

By affirmatively selecting a federal forum for litigation of this case, the Commonwealth invoked federal court jurisdiction and waived its immunity from suit. See Lapides, 535 U.S. at 623 (also stating that waiver of a State's Eleventh Amendment immunity from suit "is a question of federal law"). It did not, however, waive any defenses provided by its own sovereign immunity law. In our federal system, the States retain the measure of sovereignty necessary to enact and be protected by such laws. State sovereign immunity preexisted the Constitution and remains intact today. By providing for the States' retention of this preratification sovereignty, "the structure of the Constitution allows for variation between the nature and structure of each state's immunities from suit and liability." Meyers, 410 F.3d at 253. Accordingly, a State may establish its own immunity against liability that is distinct from the Eleventh Amendment immunity from suit enjoyed by all the States. We hold that the Commonwealth has immunity from liability regarding claims under the ADEA, and it has not waived such immunity in this case.

## V.

For the foregoing reasons, we will reverse the judgment of the District Court and remand with instructions to grant the Commonwealth's motion for partial dismissal.