[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10436
_____

D.C. Docket No. 2:11-cv-00006-MEF-CSC

PATRICIA G. STROUD,

Plaintiff–Appellant,

versus

PHILLIP MCINTOSH,
THE ALABAMA BOARD OF PARDONS AND PAROLES,

Defendants–Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(July 23, 2013)

Before WILSON and COX, Circuit Judges, and VOORHEES,[*] District Judge.

_____

[*] Honorable Richard Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

COX, Circuit Judge:

The principal issues we address in this appeal are (1) whether removal of this case to a federal court waived the state agency's sovereign immunity from *suit* in a federal court, and (2) whether removal of the case waived the agency's sovereign immunity from *liability* on a claim under the federal Age Discrimination in Employment Act. We conclude that removal waived the agency's immunity from suit in a federal forum but did not waive the agency's immunity from liability on this federal claim. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case began in a circuit court in Montgomery County, Alabama, in December 2010, when Patricia Stroud sued her employer, the Alabama Board of Pardons and Paroles, and Phillip McIntosh, the Board's personnel director during the relevant time. Against the Board, Stroud's original complaint alleged claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, and the Alabama Age Discrimination in Employment Act (AADEA), Ala. Code §§ 25-1-20 to -29. The Complaint alleged the same claims against McIntosh, as well as a claim under 42 U.S.C. § 1983 and state law claims for wanton conduct and intentional infliction of emotional distress.

The Board and McIntosh removed the case to federal court, invoking the court's subject-matter jurisdiction under 28 U.S.C. § 1331. Five months after

removal, Stroud amended her complaint.  The Amended Complaint alleged claims under § 1983 and Title VII against both defendants, repeated the state law claims against McIntosh, and added a claim for damages under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, against the Board.

In its Answer, the Board asserted as an affirmative defense (among many others) that the Eleventh Amendment and the doctrine of sovereign immunity barred all of Stroud's claims against it.  (Dkt. 26 at 17–18.)  The Board then moved for judgment on the pleadings, and McIntosh moved to dismiss the case.

The district court dismissed all of Stroud's federal claims other than the ADEA claim for failure to state a claim.  (Immunity was not a basis for dismissal of these claims.)  Importantly for this appeal, the district court held that the Board was immune from liability under the ADEA and did not waive that immunity when it removed the case to federal court.  The court entered judgment in favor of the Board on the ADEA claim and remanded the remaining state law claims against McIntosh to state court.

Stroud appeals.

## II.  ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

Stroud raises a number of issues on appeal.  We address only her contentions that the Board waives its immunity from suit and its immunity from liability under the ADEA when it removed the case.[1]

For these contentions, Stroud relies on the Supreme Court's reasoning in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S. Ct. 1640 (2002).  She argues that the rationale behind *Lapides*'s holding suggests that a state waives its sovereign immunity—to both a federal forum and liability for a particular claim—when it removes a case.  The Board contends in response that *Lapides* is distinguishable on its facts and that *Lapides*'s reasoning does not inform our result in this case; accordingly, the Board argues, it did not waive its immunity from suit or from liability by removing.

## III.  DISCUSSION

The questions we address—whether a state waives its sovereign immunity from suit and whether it waives its immunity from liability when it removes—are questions of law that we review de novo.  *See Barnes v. Zaccari*, 669 F.3d 1295, 1302 (11th Cir. 2012).

---

[1] Stroud challenges other rulings of the district court, none of which were resolved on the basis of sovereign immunity.  Specifically, she contends that the district court improperly dismissed her Title VII claims against both defendants and erred by dismissing her § 1983 claims against McIntosh.  We conclude that there is no error in these challenged rulings.

A.  Sovereign Immunity and the Eleventh Amendment

Put in its broadest form, the concept of sovereign immunity bars private citizens from suing states for damages.  *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751–52, 122 S. Ct. 1864, 1870 (2002).  This immunity also shields "arms of the State" from suit.  *N. Ins. Co. of N.Y. v. Chatham Cnty., Ga.*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).  There is no dispute that the Board is an arm of the state for the purposes of asserting sovereign immunity.

States enjoyed this immunity as a perquisite of their sovereignty before entering the United States.  *See Hans v. Louisiana*, 134 U.S. 1, 16, 10 S. Ct. 504, 507 (1890).  But soon after the Constitution was adopted, the Supreme Court took the position that Article III's extension of federal jurisdiction to controversies "between a State and Citizens of another State," U.S. Const. art. III, § 2, allowed states to be sued by citizens of other states in federal court.  *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 466 (1793) (opinion of Wilson, J.), *superseded by constitutional amendment*, U.S. Const. amend. XI.  The reaction to this "unexpected blow to state sovereignty" was overwhelmingly negative.  *Alden v. Maine*, 527 U.S. 706, 720, 119 S. Ct. 2240, 2250 (1999) (quoting David P. Currie, The Constitution in Congress: The Federalist Period 1789–1801, at 196 (1997)).  This negative response to *Chisholm* crystallized two years later with the ratification of the Eleventh Amendment.

By its terms, the Eleventh Amendment prohibits the "Judicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. But the language is deceiving; the Supreme Court interprets the Eleventh Amendment to mean far more than what it says. *See Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779, 111 S. Ct. 2578, 2581 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms . . . ."). Though the Amendment's text appears to only withdraw federal jurisdiction from any private suit against a state by a noncitizen, the Supreme Court reads the Amendment to remove any doubt that the Constitution preserves states' sovereign immunity in the federal courts. *Va. Office for Prot. & Advocacy v. Stewart*, ___ U.S. ___, 131 S. Ct. 1632, 1637 (2011) ("[W]e have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant."); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S. Ct. 900, 906 (1984) (recognizing that the Eleventh Amendment's "significance lies in its affirmation that the fundamental principle of

6

sovereign immunity limits the grant of judicial authority in Art. III" of the Constitution).

Importantly, the Eleventh Amendment is neither a source of nor a limitation on states' sovereign immunity from suit. *Alden*, 527 U.S. at 713, 119 S. Ct. at 2246. Rather, it is a recognition of states' sovereign immunity in federal court. *See* Erwin Chemerinsky, Federal Jurisdiction 422 (6th ed. 2012) ("The Court has thus ruled that there is a broad principle of sovereign immunity that applies in both federal and state courts; the Eleventh Amendment is a reflection and embodiment of part of that principle.").

Like most general rules, sovereign immunity has exceptions. The Supreme Court has recognized two ways that a private person can sue a state for damages: either (1) Congress can abrogate sovereign immunity by enacting legislation to enforce the substantive provisions of the Fourteenth Amendment, or (2) a state can waive its sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670, 119 S. Ct. 2219, 2223 (1999).

## B. Stroud's Contention

The ADEA, as enacted, authorized suits against states. But the Supreme Court held that Congress was without authority to abrogate states' sovereign immunity against ADEA claims. *See Kimel*, 528 U.S. at 91–92, 120 S. Ct. at 650. The Court held that the ADEA was "not a valid exercise of Congress's power

7

under § 5 of the Fourteenth Amendment" because of "the indiscriminate scope of the Act's substantive requirements[] and the lack of evidence of widespread and unconstitutional age discrimination by the States."  *Id.* at 91, 120 S. Ct. at 650.

Stroud recognizes *Kimel*'s holding.  But she argues that the Board waived this immunity when it removed the case to federal court.[2]  And she rests this argument on the Supreme Court's opinion in *Lapides*, 535 U.S. 613, 122 S. Ct. 1640.

### C.  *Lapides* and Its Scope

The facts in *Lapides* bear some similarity to the facts in this case.  A university professor sued the Board of Regents of the University System of Georgia (an arm of the state) in state court, alleging a violation of Georgia law.  Notably, Georgia had expressly consented to suit in its own courts for the alleged violation.  The plaintiff also named certain university officials as defendants and alleged claims under § 1983 against them.  The defendants in *Lapides* removed the

---

[2] Stroud also argues that Alabama consented to suit for federal ADEA claims when it enacted the AADEA, because the AADEA "specifically adopted all of the rights and remedies of the federal [ADEA]."  (Appellant's Br. at 12.)

This argument is meritless.  First, the argument assumes that a state consents to suit simply by passing a law creating liability for employers generally.  Alabama has not expressly waived its immunity from AADEA claims.  *Cf. Larkins v. Dep't of Mental Health & Mental Retardation*, 806 So. 2d 358, 363 (Ala. 2001) ("[The state's] immunity cannot be waived by the Legislature or by any other State authority.").  Second, even if Alabama had waived its immunity from AADEA claims, that fact would not affect whether Alabama waived its immunity from claims under the federal ADEA.  A state does not waive immunity against a federal law by waiving immunity against a similar state law.  *See Kimel*, 528 U.S. at 91–92, 120 S. Ct. at 650 (recognizing that states' express consent to claims under state age-discrimination laws does not affect states' immunity from federal ADEA claims).

case to federal court.  The district court then dismissed the § 1983 claims on the basis of qualified immunity, leaving only the state law claim against the Board of Regents.  The Board of Regents asserted immunity under the Eleventh Amendment from the state law claim in federal court, but the district court held that the Board of Regents had waived its immunity when it removed the case.

The Supreme Court agreed with the district court.  Using the phrase "Eleventh Amendment immunity" to refer to a state's immunity from suit in a federal forum, the Court began by reciting the principle that a state waives its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of the federal courts.  *Lapides*, 535 U.S. at 619, 122 S. Ct. at 1643–44.  That principle, the Court decided, applies where the state removes a case to federal court because removal constitutes a voluntary invocation of federal jurisdiction.  *Id.* at 620, 122 S. Ct. at 1644.  The Court reasoned that the principle has as its main concern the potential for "inconsistency, anomaly, and unfairness" if a state were allowed to (a) submit its case for resolution in the federal courts and (b) if advantageous, deny the federal courts' jurisdiction to resolve the case.  *Id.* at 619–23, 122 S. Ct. at 1643–46.  Even though the Board of Regents argued that it sought no unfair advantage by removing, the Court refused to consider its motive because "[m]otives are difficult to evaluate, while jurisdictional rules should be clear."  *Id.* at 621, 122 S. Ct. at 1645.  Ultimately, the Court said, "the rule is a clear one"—"removal is a

form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum." *Id.* at 623–24, 122 S. Ct. at 1646.

The Court placed two restrictions on its holding. Because (1) the only remaining claim in the case was a state law claim and (2) Georgia had waived its immunity-based objection to suit in its own courts, the Court limited its holding to "state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617, 122 S. Ct. at 1643. The Court noted that the plaintiff's claim was a state law claim, not "a valid federal claim against the State." *Id.* Moreover, the opinion declined to "address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court." *Id.* at 617–18, 122 S. Ct. at 1643.

The contrast between *Lapides*'s narrow holding and its broad reasoning has sparked a debate in other circuits. These courts have addressed the weight of *Lapides*'s reasoning in the situations *Lapides*'s holding expressly does not control—where the state removes a case involving a valid federal law claim or where the state has not relinquished its immunity from suit in its own courts. We find a brief review of these cases helpful to give context to this case.

Most circuit courts seem to agree that the *Lapides* Court's reasoning should apply in cases involving federal law claims as well as those involving state law

10

claims. That is, the source of a plaintiff's claim against a state (state law or federal law) is irrelevant to whether a state waives its immunity against that claim by removing to federal court. *See Lombardo v. Penn., Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (applying *Lapides*'s reasoning to a state's removal of a federal claim); *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004) ("Nothing in the reasoning of *Lapides* supports limiting the waiver . . . to state law claims only."); *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1204 (10th Cir. 2002) (applying *Lapides*'s reasoning to hold that the state waived immunity by removing a federal claim); *see also Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 340–42 (1st Cir. 2011) (distinguishing *Lapides* in the context of a removed federal law claim without reference to *Lapides*'s application only to removed state law claims); *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005) (same).

But the circuits divide over the meaning of *Lapides*'s second limitation—that it does not control cases in which the state has not relinquished its sovereign immunity in its own courts against the claim in question. On one hand, three circuits (the First and Fourth Circuits and the D.C. Circuit) distinguish *Lapides* on that basis, holding that a state did not waive sovereign immunity by removing a case because, unlike Georgia in *Lapides*, the state had not waived its immunity in its own courts. *See Bergemann*, 665 F.3d at 341; *Stewart*, 393 F.3d at 488–89; *Watters v. Washington Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir.

11

2002), *cert. denied*, 538 U.S. 1574, 123 S. Ct. 1574 (2003). On the other hand, three circuits (the Seventh, Ninth, and Tenth) read *Lapides*'s broad reasoning to establish the general rule that a state's removal to federal court constitutes a waiver of immunity, regardless of what a state waived in its own courts. *See Bd. of Regents of the Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 461 (7th Cir. 2011); *Embury*, 361 F.3d at 564–65; *Estes*, 302 F.3d at 1204–06.

Two circuits (the Third and Fifth) occupy something of a middle ground. *See Lombardo*, 540 F.3d 190; *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236 (5th Cir. 2005), *cert. denied sub nom. Texas v. Meyers*, 550 U.S. 917, 127 S. Ct. 2126 (2007). These courts conclude that *Lapides*'s reasoning informs the answer to the question of whether a state has waived its immunity-based objection to suit in a federal forum—and *only* that question. But sovereign immunity, they say, encompasses more than this narrow immunity from federal jurisdiction; specifically, a state that waives its forum-based immunity may still have immunity from liability for particular claims. *See Lombardo*, 540 F.3d at 198–200; *Meyers*, 410 F.3d at 252–55. That underlying immunity from liability is unaffected by the state's voluntary invocation of the federal forum. *See Lombardo*, 540 F.3d at 200; *Meyers*, 410 F.3d at 255.

12

## D. Our Holding

We agree with the conclusions of the Third and Fifth Circuits. We hold that although the Board's removal to federal court waived its immunity-based objection to a federal forum, the Board retained its immunity from liability for a violation of the ADEA.

### 1.

As a preliminary matter, we agree that sovereign immunity is a divisible concept. *See Lombardo*, 540 F.3d at 198–200; *Meyers*, 410 F.3d at 252–55. The Supreme Court has repeatedly recognized that sovereign immunity is a flexible defense with multiple aspects that states can independently relinquish without affecting others. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. ___, 131 S. Ct. 1651, 1658 (2011) (noting that a state's waiver of sovereign immunity "in its own courts is not a waiver of its immunity from suit in federal court" and that a state can retain its "immunity to damages" even if it waives sovereign immunity against "other types of relief"); *Fed. Mar. Comm'n*, 535 U.S. at 766, 122 S. Ct. at 1877 (suggesting that sovereign immunity is an immunity "from suit" and encompasses a narrower "defense to monetary liability"); *Coll. Sav. Bank*, 527 U.S. at 676, 119 S. Ct. at 2226 (noting that a state can retain its immunity from suit in federal court even when it waives immunity in its own courts (citing *Smith v. Reeves*, 178 U.S. 436, 441–45, 20 S. Ct. 919, 921–22 (1900))); *Atascadero State Hosp. v. Scanlon*, 473

U.S. 234, 241, 105 S. Ct. 3142, 3146–47 (1985) (same)*, superseded by statute on other grounds*, Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, 100 Stat. 1807.   And courts (including ours) have acknowledged that sovereign immunity can include immunity from suit as well as immunity from liability, depending on a state's choices in fashioning the scope of its immunity.  *See, e.g.*, *New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004) ("Certainly, a state may waive its immunity from substantive liability without waiving its immunity from suit in a federal forum."); *CSX Transp., Inc. v. Kissimmee Util. Auth.*, 153 F.3d 1283, 1286 (11th Cir. 1998) (examining Florida law and determining that Florida fashions its sovereign immunity as an immunity from liability but not from suit); *cf. Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124 (1996) (explaining that the sovereign immunity embodied by the Eleventh Amendment exists both to "preven[t] federal-court judgments that must be paid out of a State's treasury," implying an immunity from liability, and to "avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," implying an immunity from suit (alteration in original) (internal quotation marks omitted)).

The point that arises from these cases: a state, if it chooses, can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts.

2.

The Board contends that *Lapides* does not apply to this case because, unlike in *Lapides*, Alabama has not waived its immunity before its own courts for ADEA claims. We agree with the Board's position that *Lapides* is distinguishable and does not *control* our result. But the first question we address is whether to accept *Lapides*'s reasoning as support for a holding that removal in this case waived the Board's immunity from a federal forum. We conclude that *Lapides*'s reasoning supports that holding.

A close reading of the opinion shows that the *Lapides* Court sought to avoid the unfairness, anomaly, and inconsistency of a state's invocation of federal jurisdiction by removal, on one hand, and on the other, its denial of federal jurisdiction by asserting immunity from federal court proceedings. The Court first mentions this potential anomaly at the beginning of its analysis:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Lapides*, 535 U.S. at 619, 122 S. Ct. at 1643. This paradox, the Court says, "could generate seriously unfair results." *Id.* The Court notes that the voluntary-invocation principle seeks to avoid "selective use of 'immunity' to achieve litigation advantages." *Id.* at 620, 122 S. Ct. at 1644. In other words, it would be

15

unfair to allow a state to remove to a federal forum and then assert a jurisdictional immunity from that federal forum—this tactic would allow a state to essentially use removal as a jurisdictional trump card in any case initiated in a state forum that could fall under the original jurisdiction of the federal courts.

So, under *Lapides*'s reasoning, a state waives its immunity from a federal forum when it removes a case, which voluntarily invokes the jurisdiction of that federal forum. But nothing in *Lapides* suggests that a state waives any defense it would have enjoyed in state court—including immunity from liability for particular claims. *Lapides* specifies that it is addressing only immunity to a federal forum. *Id.* at 618, 122 S. Ct. at 1643 (narrowing the discussion to whether Georgia waived its "Eleventh Amendment immunity from suit in a federal court"); *id.* at 624, 122 S. Ct. at 1646 ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to *litigation of a matter . . . in a federal forum*." (emphasis added)). In fact, the opinion distinguishes this immunity against federal court proceedings from a state's "underlying sovereign immunity," *id.* at 617–18, 122 S. Ct. at 1643—implying that its discussion of immunity from federal court does not address other aspects of sovereign immunity, including a state's immunity from liability. Finally, the Court's reasoning, including its concern for the potential unfairness of a state gaining a new litigation advantage by removing, does not involve a state's

16

immunity from liability that the state would have enjoyed had it remained in its own courts.  We do not understand *Lapides* to require the state to forfeit an affirmative defense to liability simply because it changes forums.  But the *Lapides* Court's reasoning supports the propositions that a state consents to federal jurisdiction over a case by removing and that it cannot then challenge that jurisdiction by asserting its immunity from a federal forum.  We therefore hold that the Board waived its immunity from suit in federal court when it removed the case.[3]

### 3.

That brings us to our final point.  The defense of immunity from a federal forum was not the only immunity-based defense the Board had in its arsenal and asserted in the Answer.  As we have established, a state can waive its forum immunity but retain other aspects of sovereign immunity, including immunity from liability for certain claims.  *See Lombardo*, 540 F.3d at 198–200; *Meyers*, 410 F.3d

---

[3] That Stroud added the ADEA claim only after the case was removed does not change the result.  Forum immunity is a jurisdictional immunity that shields a state from suit in federal court.  U.S. Const. amend. XI ("The *Judicial power* of the United States shall not be construed to extend to *any suit* . . . ." (emphasis added)).  Once that jurisdiction is invoked by removal, the federal court has jurisdiction over the entire *case*—not simply those claims that the complaint alleged at the time of removal.  *See* 28 U.S.C. § 1441(a) ("[A]ny *civil action* brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by the defendant . . . ."); Fed. R. Civ. P. 81(c)(1) (applying the Federal Rules of Civil Procedure to removed cases); *id.* R. 15(a)(2) (allowing parties in civil cases to amend pleadings "with the opposing party's written consent or the court's leave"); *Embury*, 361 F.3d at 565 ("[T]he State removed the case, not the claims, and like all cases in federal court, it became subject to liberal amendment of the complaint.").

17

at 252–55. Here, an arm of the state remains immune from liability for claims under the ADEA, notwithstanding its removal of the case.

The Supreme Court has made it clear that the ADEA is unconstitutional as applied to the states because Congress did not enact the law under section 5 of the Fourteenth Amendment, the only recognized constitutional basis for abrogating states' sovereign immunity. *Kimel*, 528 U.S. at 91–92, 120 S. Ct. at 650. The Board's removal of the case did not waive its constitutional objection to ADEA liability on the basis of sovereign immunity. *See Meyers*, 410 F.3d at 255 n.27 (recognizing that, even after waiver by removal, a state may raise an objection to liability on the basis that Congress did not abrogate its sovereign immunity).

Nor has Alabama waived its immunity from ADEA claims through other means. Alabama retains a "nearly impregnable" immunity from suit, *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002), and neither the state legislature nor any other state authority can waive it, *Larkins v. Dep't of Mental Health & Mental Retardation*, 806 So. 2d 358, 363 (Ala. 2001). Alabama may assert the defense of immunity from ADEA liability in state court. *Cf. Ala. State Docks Terminal Ry. v. Lyles*, 797 So. 2d 432, 438 (Ala. 2001) (holding that an arm of the state was immune in the state trial court from a claim brought under the Federal Employers' Liability Act). Its removal to federal court did not affect the availability of that defense. *Cf. Lombardo*, 540 F.3d at 198 ("[W]hile voluntary

18

removal waives a State's immunity from suit in a federal forum, the removing State retains all defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability."); *Meyers*, 410 F.3d at 255 ("[T]he Constitution permits and protects a state's right to relinquish its immunity from suit while retaining its immunity from liability, or vice versa . . . ."). The Board's affirmative defense of sovereign immunity was therefore valid, and the district court correctly held that the Board did not waive that defense by removing.

## IV.  CONCLUSION

We conclude that the Board waived its defense of immunity from litigation in federal court when it removed to federal court, but the Board did not waive its immunity from ADEA liability.  The judgment of the district court is therefore

AFFIRMED.