IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 92-8451

———————————

CHARLES WILLIAMS,

Plaintiff-Appellant,

versus

TEXAS TECH UNIVERSITY
HEALTH SCIENCES CENTER ET AL.,

Defendants,

EDWARD C. SALTZSTEIN, JOSEPH
BROWN, III and JAMES C. LEWIS,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

(October 22, 1993)

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and
DAVIDSON,* District Judge.

HIGGINBOTHAM, Circuit Judge:

A professor claims that the decision to reduce his salary
violated the Constitution. We affirm the district court's grant of
judgment as a matter of law against the professor.

I.

Texas Tech University Health Sciences Center hired Dr. Charles
Williams as an associate professor and director of anesthesiology

_____

*District Judge of the Northern District of Mississippi,
sitting by designation.

research in 1982 at an annual salary of $42,016.92, assigning him to the El Paso Regional Academic Health Center. The university granted him tenure in March 1986. In September 1987 he became director of research in the department of surgery and his compensation increased to $68,004 per year: $64,000 in base salary and $4,204 in fringe benefits.

Part of Williams's salary came from the Medical Practice Income Plan, a fund collected from professional activities of the physician faculty members. In early 1989, Dr. Edward Saltzstein, the department chair, told Williams that as of September 1, 1989, MPIP funds would not be used to augment Williams's salary because Williams had not generated the expected amount of grant money. Saltzstein sent a memo to Williams stating his plans and reasons on March 21, 1989. In mid-1989 the surgery department received budget documents indicating that Williams was entitled to the full $68,000 salary. A form was filled out in early September to amend the budget to reflect Williams's lower salary, which was approved by administrators Dr. Joseph Brown III & James Lewis. September 1, 1989, Williams began receiving an annual salary of $46,449.

In 1991 Williams sued the University Health Science Center, the medical school's Medical Practice Income Plan, Saltzstein, Brown and Lewis, alleging that his salary decrease had been achieved by denying him procedural and substantive due process and that the decrease gave rise to state law claims for intentional infliction of emotional distress and breach of contract. In 1992 he voluntarily dismissed all his claims except for his

2

constitutional claims against the university officials in their individual and official capacities.  Those claims were tried to a jury in July 1992, and at the close of Williams's case-in-chief the district court granted the officials' oral motion for judgment as a matter of law.

II.

A.

Any property interest Williams had in his entire salary was tenuous at best, as we will explain.  In any event, he received the process due him.  The Supreme Court has identified three factors to weigh in deciding how much process a property interest deserves:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  The "minimal" process set out by our cases applying Eldridge is notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs.  See Eguia, 756 F.2d at 1139.

Williams received this baseline procedural protection.  In early 1989, Saltzstein told Williams that MPIP funds would no longer be used to augment his salary and Williams would have to generate grant funds himself.  On March 21, 1989, Saltzstein sent

3

the memo to Williams described earlier. On both occasions Williams responded. Nothing more was required on these facts.

A state university has a significant interest in having reasonable discretion to administer its educational programs. Texas Faculty Ass'n v. University of Texas at Dallas, 946 F.2d 379, 385-86 (5th Cir. 1991). See also Board of Curators v. Horowitz, 435 U.S. 78 (1978); Goss v. Lopez, 419 U.S. 565 (1975) (both finding that student suspension requires minimal process because of the freedom of action required for effective school administration). The strength of that interest gives schools leeway in making broad budget decisions that may affect only a few employees. See generally Texas Faculty, 946 F.2d at 387-89.

Williams's interest in a specific level of income does not outweigh the state's. Equia v. Tompkins, 756 F.2d 1130 (5th Cir. 1985), required few procedural safeguards for the decision to withhold a final paycheck because the interest was "substantial, but . . . [not] of the same magnitude as the interest of a person 'on the very margin of subsistence' in the receipt of governmental benefits." Id. at 1138 (quoting Goldberg v. Kelly, 397 U.S. 254, 264 (1970)). This case involves more money over a longer period than the check at issue in Equia, but falls short of the termination decisions contested in Texas Faculty, 946 F.2d at 384. Significantly, the low risk of erroneous decision making entailed by the process used further erodes Williams's claim that he deserved more process. See Texas Faculty, 946 F.2d at 386. The

4

district court properly granted judgment as a matter of law on all procedural due process claims.

B.

Alternatively, the district court correctly granted judgment to defendants in their individual capacity. The uncertainty about Williams's asserted property right in his entire salary gave the administrators qualified immunity to claims for money damages. Government officials sued in their individual capacities for money damages enjoy qualified immunity from liability for money damages if their conduct did not violate clearly-established law of which a reasonable official would have been aware. Anderson v. Creighton, 107 S.Ct. 3034, 3038-39 (1987). Property interests are created and their dimensions are defined by existing rules or understandings under state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). An interest can arise from a "mutually explicit understanding" between an employer and employee. Perry v. Sinderman, 408 U.S. 593, 601 (1972).

An expectation of employment carries with it some protected expectations as to a salary. In some situations that expectation can encompass an employee's entire salary. See Equia v. Tompkins, 756 F.2d 1130, 1138 (5th Cir. 1985); Orloff v. Cleland, 708 F.2d 372, 378 (9th Cir. 1983). But the more detailed and conditional the understanding becomes between employer and employee, the weaker the linkage becomes between those understandings and the Due Process Clause. See Mangaroo v. Nelson, 864 F.2d 1202, 1206-08 (5th Cir. 1989). At some point the linkage is uncertain enough to justify qualified immunity for an official accused of breaking it.

This relationship arguably passes that point.  The background to the relationship includes two university regulations that envision an employment relationship with some "ebb and flow." First, the tenure regulations allow annual adjustments in a tenured professor's salary:

> A tenured appointment assures the right of the faculty member to a continuing academic position of employment. The tenured faculty member's contract, however, is subject to possible annual adjustments regarding salary, rank, and conditions of employment.

§ 06.04(5)(A) ("Conditions of Tenured Appointments").  Second, section 2.31 of the MPIP bylaws states that "[i]t is expressly understood that each member's augmentation as determined under Section 2.33, shall not be guaranteed to any such member."  Section 2.33 mandates that each member's augmentation shall be determined annually based on the recommendations of various administrators and approval of the president.

Given the uncertainties underlying the employment relationship between the university and Doctor Williams, we cannot say that the law clearly established that his property interest in the entirety of his salary was constitutionally protected.  The "mutually explicit understanding" between the university and Dr. Williams rested on periodic evaluations and salary revisions.  A reasonable administrator could have concluded on these facts that Dr. Williams's salary could be adjusted without treading on ground clearly protected by the Constitution.  The district court correctly granted judgment as a matter of law in favor of the administrators on the issue of their qualified immunity.

7

                              III.

    We now turn to Williams's substantive due process claims.  To
state a substantive due process claim a plaintiff must show that
the government's deprivation of a property interest was arbitrary
or not reasonably related to a legitimate governmental interest.
Brennen v. Stewart, 834 F.2d 1248, 1256 (5th Cir. 1988).  Judicial
evaluation of academic decisions requires deference and they are
overturned only if they are "such a substantial departure from
accepted academic norms as to demonstrate that the person or
committee responsible did not actually exercise professional
judgment."  Regents of the Univ. of Michigan v. Ewing, 474 U.S.
214, 225 (1985).  Defendants Saltzstein, Brown, and Lewis each
testified that Williams's salary was reduced for lack of grant
productivity and lack of funded grant salary support.  The district
court properly granted judgment as a matter of law on all claims
involving substantive due process.

    AFFIRMED.

                               8