**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3084
_____

JEROME MCKINNEY

v.

UNIVERSITY OF PITTSBURGH,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2-15-cv-01538)
District Judge: Honorable Nora B. Fischer
_____

Argued: September 6, 2018

Before: HARDIMAN, KRAUSE, and BIBAS, *Circuit Judges*

(Opinion Filed: February 14, 2019)

Shannon H. Paliotta
University of Pittsburgh
Office of General Counsel
1710 Cathedral of Learning
4200 Fifth Avenue
Pittsburgh, PA 15260

Kim M. Watterson            [Argued]
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

M. Patrick Yingling
Reed Smith
10 South Wacker Drive
40th Floor
Chicago, IL 60606

      *Counsel for Appellant University of Pittsburgh*

Sean L. Ruppert            [Argued]
Kraemer Manes & Associates
600 Grant Street
U.S. Steel Tower, Suite 4875
Pittsburgh, PA 15219

      *Counsel for Appellee Jerome McKinney*

Shannon D. Farmer
Burt M. Rublin
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103

      *Counsel for Amicus Appellants Temple University, the Pennsylvania State University, Rowan University and Delaware State University*

————————

OPINION OF THE COURT
————————

KRAUSE, *Circuit Judge*.

      Jerome McKinney, a longtime, tenured professor at the University of Pittsburgh's Graduate School of Public and International Affairs, challenges the University's decision to reduce his salary as a violation of the Due Process Clause. Based largely on the negative implications that can be drawn from a University policy that discusses salary increases but nowhere mentions salary decreases, McKinney argues that he has a property interest in the continued receipt of his base salary and that he was deprived of that interest without due process. The District Court agreed, granting summary judgment for McKinney. Because we conclude McKinney lacks a property interest in the entirety of his base salary, we will reverse and remand for entry of judgment in favor of the University.

## I.    Background

When McKinney was hired in 1970 and granted tenure in 1974, the terms of his employment were not governed by a collective bargaining agreement or employment contract per se, but by University policies promulgated by the University Trustees.  Those policies provide that tenured faculty can be terminated only "for cause," App. 795, and they explicitly provide yearly salary raises for all faculty who perform satisfactorily or meritoriously.  According to University Policy 07-09-01 (the "Policy"), "[e]ach faculty or staff member performing satisfactorily will receive a percentage increase of the size determined for that year for maintenance of real salary," i.e., a salary increase to account for inflation.  App. 1152–53.  And for meritorious faculty, the Policy states that "every faculty . . . member whose performance is judged meritorious receives a merit increase in salary."  App. 1153.  Any salary increase for "maintenance" or merit "become[s] part of [the faculty member's] base contract salary in subsequent years." *Id.*

No explicit provisions govern salary decreases, but the Policy provides procedures to address complaints from faculty members dissatisfied with their salary decisions and requires that if a faculty member's performance is "judged unsatisfactory," the faculty member "must be informed of the specific reasons for that judgment."  App. 1154.

Whether a given professor's performance is meritorious, satisfactory or unsatisfactory depends on three criteria: (1) teaching ability, (2) achievements in research and scholarship, and (3) service to the University and/or community.  For McKinney, these criteria were assessed in an

4

annual review process overseen by the Dean of the Graduate School of Public and International Affairs (the "Grad School"). To evaluate these criteria, the Dean invites input from the faculty members themselves and from their peers and students. That input is typically in the form of reports prepared by each faculty member, which summarize their activities and achievements for the year; evaluations provided by an elected committee of Grad School faculty members, which scores each faculty member on all three criteria; and student evaluations and enrollment data tracked by the University. Based on the submissions received, the Dean makes a final decision about faculty performance, rating each faculty member as meritorious, satisfactory, or unsatisfactory, and determines what salary a faculty member will receive the following year in accordance with the Policy.

McKinney did not fare well in recent years in this review process. In McKinney's 2010 and 2011 reviews, John Keeler, the Dean of the Grad School for all relevant periods, expressed concern about declining enrollment in McKinney's classes, poor student evaluations, and a stagnant research agenda, but nonetheless granted him the standard 2.0% and 1.5% maintenance increases which were budgeted respectively in those years for faculty with "satisfactory" performance. Despite the admonition from Dean Keeler, these same deficiencies persisted through the 2012 review, in which McKinney ranked last among the Grad School faculty and was given a performance rating of "less than satisfactory." App. 231. At the conclusion of that review in August 2012, McKinney was advised that his salary would be increased by only 0.5%, and that if his "performance d[id] not improve next year . . . [Dean Keeler] w[ould] have no recourse but to give

5

[McKinney] a 0.0% raise or even consider a salary reduction." App. 233.

Still, McKinney's performance showed no improvement. He was again ranked last in the 2013 review, prompting Dean Keeler to reduce his salary by 20%. In a face-to-face meeting with McKinney in September 2013, Dean Keeler advised McKinney of this decision and provided him a letter that laid out over the course of five pages the long-standing problems with McKinney's teaching and research that justified the decision.

McKinney then lodged a complaint directly with the University Provost. Although this was not consistent with the prescribed Grad School appeal process, the University investigated and ultimately concluded that McKinney's salary reduction was not improper.

At that point, McKinney filed a complaint in federal court alleging that the University unconstitutionally deprived him of his property interest in the entirety of his base salary. After discovery, the parties cross-filed for summary judgment, which the District Court granted in favor of McKinney.[1] In support of his motion, McKinney argued that the University's "tenure system, policies, and bylaws" created a "property right to his salary." *McKinney v. Univ. of Pittsburgh*, Civil Action No. 15-1538, 2017 WL 2418689, at *11 (W.D. Pa. June 5, 2017) (quoting ECF No. 25 at 5–6). The University countered

---

[1] McKinney's complaint also included a count alleging racial discrimination, but McKinney did not oppose the University's motion for summary judgment on this claim.

in its motion that though McKinney had a property interest in continued employment, he did "not have a constitutionally protected interest in any set salary." *Id*. at *10 (citing ECF No. 21 at 16–17).

After reviewing the relevant University policies and the process by which the University reduced McKinney's salary, the District Court sided with McKinney, concluding that he had a property interest in his full salary and that the University deprived him of that interest without due process. The University moved to stay the proceeding and filed for interlocutory appeal, which we granted.[2]

## II.     Jurisdiction and Standard of Review[3]

---

[2] The District Court initially certified to us only the question of McKinney's property interest in the entirety of his base salary, and we granted review as to that question and the question of whether the process by which the University reduced McKinney's salary comported with the Due Process Clause. Because of the conclusion we reach below, however, we do not reach the procedural due process issue.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1292(b). For purposes of the state action doctrine, the parties agree that "[a]ctions taken by [the University] are . . . actions taken under color of state law and are subject to scrutiny under section 1983." *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 103 (3d Cir. 1984).

We review the District Court's grant of summary judgment de novo. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015) (citation omitted). To prevail at this stage, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all facts "in the light most favorable to the non-moving party," with "all reasonable inferences [drawn] in that party's favor," *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

## III. Discussion

On appeal, the University argues that McKinney does not have a property interest in his full salary because the Policy does not protect his base salary against reduction. McKinney also focuses exclusively on the Policy, arguing that the language of the Policy gives him a constitutionally protected property interest in his base salary.[4] We conclude that the

---

[4] On appeal, McKinney has abandoned any argument that the mere fact of tenured status supports a property interest in his entire base salary. *See* Appellee Br. 15 ("Plaintiff *does not* contend that his property right to the entirety of his salary is derived from his tenure status, nor to the mere lack of a specific policy allowing for salary reductions. Rather, Plaintiff contends that his property interest in a specific amount of salary arises directly out of Defendant's Policy 07-09-01."). Nor does he contend that the salary reduction he received was of sufficient magnitude to implicate the interest a tenured faculty member at the University would have in continued employment. *See Ferraro v. City of Long Branch*, 23 F.3d 803, 806–07 (3d Cir. 1994) (recognizing that adverse employment

Policy is insufficient to support a constitutionally protected property interest. Below, we first address what is needed to establish a property interest in this context and then explain why the Policy fails to meet that high bar.

The Fourteenth Amendment protects against "depriv[ation] of an individual interest [in] . . . property" without the "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Core to the existence of an individual property interest is the requirement that the plaintiff have "a legitimate claim of entitlement to" the interest at issue that stems from "an independent source such as state law" or "rules or understandings that secure certain benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Thus, it is not sufficient that a plaintiff has an "abstract need or desire" or a "unilateral expectation" of a particular benefit. *Id.* Instead, the property interest must arise from either the "circumstances of . . . service" or the "mutually explicit understandings that support [the] claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

The Supreme Court has set a high bar for how "explicit" an understanding must be in order to support a property interest. In the context of state universities, for example, the Court has recognized a property interest in "continued

---

actions short of termination can "rise to [the] level of . . . constructive discharge" and thereby implicate an interest in continued employment); Appellant Br. 35, 37 (acknowledging McKinney's property interest in continued employment).

9

employment" where tenured faculty have been expressly informed that they may be terminated only "for cause." *See Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997) ("[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process." (citation omitted)). In other contexts, the Court likewise has found property interests where it was clear that the expectation was mutual. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11–12 (1978) ("Because petitioners may terminate [utility] service only 'for cause,' respondents assert a 'legitimate claim of entitlement' within the protection of the Due Process Clause." (footnote omitted)); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (recognizing a property interest in welfare benefits that were assured as "a matter of statutory entitlement"). And conversely, it has declined to recognize such an interest where the claimants failed to "show[] the requisite *mutual* understanding," even if those claimants could show "reasonable expectations of" receiving the benefit at issue. *Leis v. Flynt*, 439 U.S. 438, 441–43 (1979) (addressing an "out-of-state lawyer's [alleged property] interest in appearing *pro hac vice*," where "the prevalence of *pro hac vice* practice in America[n] courts" and "not a right granted either by statute or the Constitution" was the purported basis of the interest).

Although the Supreme Court itself has not had occasion to address the contours of a property interest in base salary, some of our sister circuits have done so, holding that a public employee may claim such an interest only where there is explicit assurance to that effect. *See, e.g.*, *Roybal v. Toppenhish Sch. Dist.*, 871 F.3d 927, 930, 932 (9th Cir. 2017) (holding that a statute which "limit[ed] the grounds on which salary may be reduced, create[d] a reasonable expectation that

10

[public school] principals w[ould] continue to receive their salary, and therefore, a protected property right" (citation omitted)); *Atterberry v. Sherman*, 453 F.3d 823, 827 (7th Cir. 2006) (holding that a statute protecting against "demotion," which was defined in terms of salary reduction, created a "certain legitimate expectation[]" that the employee "could not be subjected to reduction in salary or rate"); *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002) (holding that a statute which provided that a state employee "may be removed, suspended without pay, discharged, reduced in base pay or demoted only for just cause" created a property interest).

On the other hand, where there is ambiguity or it is explicit that a public employee's salary *can* be reduced, the Courts of Appeals do not recognize a property interest in a set salary. *See, e.g.*, *Williams v. Texas Tech. Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993) (holding that tenure regulations which subjected salary to "possible annual adjustments" did not create a property interest in a particular salary because the "'mutually explicit understanding' . . . rested on periodic . . . salary revisions"); *Ash v. Bd. of Educ. of Woodhaven Sch. Dist.*, 699 F.2d 822, 826 (6th Cir. 1983) (holding that a reduction in public school teacher pay following the shortening of a school calendar did not violate a property interest because the teachers had only a "unilateral expectation of receiving their full salary"); *Childers v. Indep. Sch. Dist. No. 1 of Bryan Cty.*, 676 F.2d 1338, 1341 (10th Cir. 1982) (holding that a teacher's reassignment, which resulted in a lower salary, did not "deprive[] him of a protected property interest" because the relevant statutes did not require that each year's contract "contain identical terms as those found in the preceding year's contract."). In general, as the Fifth Circuit has observed, "the more detailed and conditional

11

the understanding becomes between employer and employee, the weaker the linkage becomes between those understandings and the Due Process Clause." *Williams*, 6 F.3d at 293 (citation omitted).

Here, we confront a policy that falls somewhere between the explicit assurances that salary cannot be reduced, as in the *Roybal* line of cases, and the explicit admonitions that it can be reduced, in cases like *Williams*. McKinney grounds his claim in a single line in the Policy: "Each faculty or staff member performing satisfactorily will receive a percentage increase of the size determined for that year for maintenance of real salary." App. 1153. But measured against the yardstick of *Perry* and *Roth* and the case law of our sister circuits, this language is not sufficient to give McKinney a "legitimate expectation" in the continuance of his base salary. We reach this conclusion for three reasons.

First, the Policy by its terms speaks to a potential property interest in "maintenance," i.e., an incremental annual adjustment to account for inflation, not a property interest in base salary. "Maintenance" is evaluated annually and thus relates to a benefit that has not yet been received. McKinney does not challenge the University's decision to not award him a maintenance increase; instead, he elides this prospective benefit with the continued receipt of an existing benefit: his last year's base salary.[5] Yet the Policy refers not to base salaries

---

[5] In August 2013, McKinney had a possible property interest in the continued receipt of his $117,350 base salary, which was set in August 2012, and a possible property interest

12

but to maintenance increases, and thus, to the extent it creates any "mutually explicit understanding," it is not one that supports the property interest that McKinney claims on appeal.

Second, we can hardly derive a "mutually explicit understanding" from the Policy when McKinney's entire argument is premised on a negative implication. His argument, after all, is that the phrase "increase . . . for maintenance of real salary," App. 1153, assumes—and therefore implicitly guarantees—the baseline of the prior year's salary. But while such an assumption about the meaning of "increase" may support a "unilateral expectation," *Roth*, 408 U.S. at 577, about the baseline salary, it does not protect against the reduction of salary for purposes of the Due Process Clause. And even assuming this language is sufficiently ambiguous to render McKinney's interpretation a reasonable one, the burden is on McKinney, as the plaintiff asserting a constitutionally protected property interest, to establish the converse: that a policy explicitly prohibits the reduction of base salary. *See Leis*, 439 U.S. at 443 (requiring the plaintiffs to "show[] the requisite mutual understanding" (emphasis omitted)); *Roth*, 408 U.S. at 579 (noting that the plaintiff had "not shown that he was deprived of . . . property protected by the Fourteenth Amendment"). This, he fails to do.

Third, any assurances the Policy gives, even as to increases for "maintenance," are too "detailed and conditional," *Williams*, 6 F.3d at 293, to support a property interest in the base salary. Indeed, the Policy expressly

in the receipt of an additional $1,760.25 for maintenance of his salary.

13

anticipates negative consequences for unsatisfactory performance in that it requires the Grad School to inform faculty members whose performance is "judged unsatisfactory" of the "specific reasons for that judgment," App. 1154, and it specifies procedures a faculty member may invoke to seek reconsideration of salary decisions—a circumstance that can arise in the normal course not only with salary increases that a faculty member may consider inadequate but also with salary decreases a faculty member may wish to contest. And the Policy's three-tiered rating structure (meritorious, satisfactory, unsatisfactory) itself reinforces the understanding that salary may be reduced as well as increased. Given that the Policy provides for salary increases beyond "maintenance" for those whose performance is deemed "meritorious" and an "increase . . . for maintenance of real salary," App. 1153, for those whose performance is deemed "satisfactory," the logical implication is that those whose performance is "less than satisfactory," App. 231, may be subject to salary reductions. In sum, both the appeal provisions and the three-tiered rating structure indicate that salaries are subject to "possible annual adjustments," *Williams*, 6 F.3d at 294, and that McKinney thus had no more than a "unilateral expectation of receiving [his] full salary," *Ash*, 699 F.2d at 826.

The "circumstances of [McKinney's] service," *Perry*, 408 U.S. at 602, bolster that conclusion. There is evidence in the record that the University had reduced the salary of as many as twenty faculty members in the past, indicating that McKinney's salary reduction was not wholly unusual. Furthermore, McKinney was notified as early as August 2012 that if his "performance d[id] not improve next year . . . [Dean Keeler] w[ould] have no recourse but to give [McKinney] a

14

0.0% raise or even consider a salary reduction." App. 233. Yet McKinney offered no response, and at no point before his salary was actually reduced over a year later, in September 2013, did he express surprise or object to this prospect. In short, McKinney has failed to establish *any* explicit understanding—much less a "mutually explicit understanding"—that his salary was protected against reduction.

Finally, we note that where, as here, a university policy is at best ambiguous in establishing a property interest, courts should refrain from constructing one. "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss v. Lopez*, 419 U.S. 565, 578 (1975) (ellipsis in original) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). We have heeded this admonition before, s*ee Chung v. Park*, 514 F.2d 382, 386 (3d Cir. 1975), and because we are "particularly ill-equipped" to wade into the realm of "academic decisionmaking," we will not do so without good reason. *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978).[6] That reason is notably absent here, where

---

[6] We are recipients here of an insightful and well-researched *amicus* brief by several public universities located within our Circuit. As that brief highlights, the prospect of federal courts reviewing "a university's academic judgment concerning the performance of a member of its faculty," Amici Curiae Br. 5, could inject constitutional rights into an array of public university decisions about other benefits received by

15

the language of the Policy offers too slender a reed to support the weight of a constitutional right.

## IV.     Conclusion

For the foregoing reasons, we will reverse the District Court's order granting summary judgment to McKinney and will remand with instructions to enter judgment in favor of the University.

---

their employees, such as health insurance and paid leave. As a result, federal courts should not start down this slippery slope.