**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3111
_____

DEBRA R. THOMPSON,
Appellant

v.

STATE OF DELAWARE DEPARTMENT OF SERVICES
FOR CHILDREN, YOUTH AND THEIR FAMILIES;
ALISON MCGONIGAL; KARRYL MCMANUS;
ASSISTANT CLERK ANGELA PORTER;
JOSETTE MANNING
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cv-01236)
District Judge:  Honorable Maryellen Noreika
_____

Argued:  September 24, 2021
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge,</u> HARDIMAN, and
MATEY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 11, 2022)

Victor F. Battaglia [ARGUED]
Robert D. Goldberg
Biggs & Battaglia
921 Orange Street
P.O. Box 1489
Wilmington, DE 19899

    Counsel for Appellant

Ryan T. Costa [ARGUED]
Office of Attorney General of Delaware
Delaware Department of Justice
6th Floor
820 North French Street
Carvel Office Building
Wilmington, DE 19801

    Counsel for Appellees

———————

OPINION OF THE COURT
———————

CHAGARES, Chief Judge.

Debra Thompson brought claims under 42 U.S.C. § 1983 for violations of her right to due process and under state law against the State of Delaware Department of Services for Children, Youth and their Families ("DSCYF") and several individual defendants after Thompson was demoted and

eventually terminated from DSCYF. The District Court dismissed Thompson's federal procedural due process claims on the ground that, as a former probationary employee at DSCYF, Thompson did not have a protected property interest in her employment. The District Court also dismissed Thompson's claim brought pursuant to the Delaware Whistleblowers' Protection Act ("WPA") on the ground that the Eleventh Amendment precluded the claim. The District Court declined to exercise supplemental jurisdiction over Thompson's remaining state law claims, and Thompson does not challenge this discretionary ruling. Thompson appeals, focusing mainly upon her procedural due process claims. An issue central to this appeal is whether probationary employees working for the State of Delaware have a constitutionally protected property right in continued employment or in the retention of a particular position or rank for the purpose of federal procedural due process. We hold that they do not and conclude that Thompson's due process claim was properly dismissed. In addition, we hold that the District Court properly dismissed Thompson's WPA claim because the WPA does not evince a clear intention by the State of Delaware to subject itself to suit in federal court. We will thus affirm the District Court's order.

I.

In the spring of 2016, Thompson — then employed as the Development Coach for the Professional Development Center at the University of Delaware — applied for an advertised open position as the Education Unit Supervisor ("Education Supervisor") for DSCYF. The defendants informed Thompson during her interview for the position that the prior Education Supervisor, Angela Porter, had been

3

terminated for personal reasons. DSCYF offered Thompson the position, and in July 2016, Thompson left her job at the University of Delaware to take the Education Supervisor position with a one-year probationary period.

Thompson understood at the time she was hired that DSCYF "had concerns that the education side of the Department was weak and not up to date on current rules, laws and process" and wanted Thompson to address these problems. Appendix ("App.") 22 ¶ 13. She alleges that she upgraded systems and received positive feedback for her work.

Thompson first learned in October 2016 that Porter had successfully contested her termination and that, as a result, the Delaware Merit Employee Relations Board had ordered that Porter be reinstated. Thompson expressed concern about the security of her position and was subsequently assured in writing that Porter would be filling a new position titled, "Transition Coordinator." Porter returned to DSCYF as the Transition Coordinator. But on February 17, 2017, defendant Alison McGonigal — Thompson's supervisor — informed Thompson that Porter would be reinstated as Education Supervisor in thirty days and that Thompson would become the Transition Coordinator instead. DSCYF did not provide Thompson the opportunity to pursue a grievance with respect to the change in her position. Thompson alleges that, upon information and belief, the defendants "disseminated false and misleading information concerning [Thompson's] professional reputation and abilities," because she began hearing from co-

4

workers that she was being demoted for poor performance.[1] App. 25 ¶ 25.

Between approximately March 20 and May 19, 2017, Thompson worked as the Transition Coordinator. She alleges that the defendants, including Porter, thwarted her attempts to fulfill the duties of that position. Thompson was hospitalized for emergency surgery in May 2017 and could not return to work for several months.

Thompson's one-year probationary period was set to end in July 2017. But, unbeknownst to Thompson, the defendants requested of the Office of Management and Budget an extension of her probationary period on June 5, 2017.[2] The request stated that in January 2017, Thompson "received a six month probationary review and was placed on a Performance Improvement Plan (PIP)." App. 53. The request further stated that Thompson had been removed from the Education Supervisor position "through no fault of her own" and that her direct supervisor was "unable to effectively measure performance." App. 53. Finally, the request noted "continued concerns regarding quality of work and interpersonal skills, and several absences" by Thompson. App. 53. According to Thompson, these statements are false. The defendants' extension request was approved, and Thompson's probationary period was extended.

---

[1] Thompson's February 2017 written performance evaluation stated that her performance "Meets Expectations." App. 23 ¶ 19; App. 76.

[2] Thompson challenges the validity and authenticity of this request. Her challenge is addressed infra.

Thompson returned to work in October 2017 after leaving for her surgery in May. Around this time, DSCYF demoted Thompson to a teaching position at a reduced salary, which gave Porter supervisory authority over Thompson. Thompson was not afforded an opportunity to contest the demotion. Thompson also lacked the necessary special education certifications for her new teaching position, and the defendants continually requested that she obtain those certifications. She requested accommodations, waivers, or exemptions — which she contends were commonly afforded to teachers unable to obtain the certifications — all to no avail.

Porter recommended in April 2018 that Thompson be terminated for failure to obtain the special education certifications that were required for her teaching position. Thompson concedes in passing that she could be terminated from the new teaching position "without cause under a collective bargaining agreement." Thompson Br. 12, 37. Thompson nevertheless filed a grievance claim. The hearing on this claim occurred on April 24, 2018, with Porter as the Hearing Officer. At the hearing, Porter determined that Thompson would have until June 30, 2018, to obtain the necessary special education credentials. Thompson was unable to do so and was terminated from DSCYF on July 2, 2018.

Thompson filed a lawsuit against DSCYF, Porter, and several other individual defendants. She claimed that her demotions and resulting termination from DSCYF violated both federal and state law. The defendants moved to dismiss for failure to state a claim, which the District Court granted. Thompson filed an amended complaint in which she reasserted most of her original claims and added factual allegations.

Counts I through V of the amended complaint assert federal due process violations under § 1983 based upon Thompson's assertion that her employment as a probationary employee in Delaware's merit system was subject to the protections of the Fourteenth Amendment. The remaining counts are state-law claims, including Count IX, which alleges violations under the WPA. The defendants moved to dismiss the amended complaint. The District Court granted the motion, holding that because Thompson was a probationary employee under Delaware Merit Rule 9.2, she lacked a property interest in her continued employment at DSCYF for purposes of a procedural due process claim. The court also dismissed Thompson's WPA claim on the ground that the State of Delaware had not consented to be sued in federal court under the WPA. Thompson timely appealed.

II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the grant of a motion to dismiss for failure to state a claim. Klotz v. Celentano Stadtmauer & Walentowicz LLP, 991 F.3d 458, 462 (3d Cir. 2021).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We accept as true all factual matters Thompson alleges, but her amended complaint cannot survive unless the facts it recites are enough to state plausible grounds for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We disregard legal conclusions and

7

recitals of the elements of a cause of action that are supported only by mere conclusory statements. Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 904 (3d Cir. 2021).

## III.

Thompson challenges the District Court's dismissal of her procedural due process claim. Central to this challenge is the issue of whether Delaware state probationary employees have a constitutionally protected property right in continued employment or in the retention of a particular position or rank. We hold that they do not. This is fatal to Thompson's claim, as discussed more fully below.

## A.

Thompson contends that she was deprived of procedural due process when she was demoted and ultimately terminated by DSCYF. To state a claim under § 1983 for a violation of procedural due process rights, Thompson must allege that she was deprived of an individual interest that is "encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and that the available procedures did not provide due process of law. In re Energy Future Holdings Corp., 949 F.3d 806, 822 (3d Cir. 2020) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006)). We address in turn whether Thompson had a protected property interest in her continued employment and in retaining a particular position at DSCYF.

1.

With respect to termination, a state employee possesses a constitutionally protected property right in her continued employment and is entitled to procedural due process if the employee "has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge." Goss v. Lopez, 419 U.S. 565, 573 (1975). A state employee will thus have a protected property interest if she can only be terminated for cause. See Richardson v. Felix, 856 F.2d 505, 509 (3d Cir. 1988) ("The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except for cause." (cleaned up)). The issue of whether such an employee has a legitimate claim of entitlement to be retained is determined by state law and rules. Goss, 419 U.S. at 573.

Delaware "law provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." Merrill v. Crothall-Am., Inc., 606 A.2d 96, 102 (Del. 1992). This means that "an employee at-will can be terminated for any reason, with or without cause and at any time." Lord v. Souder, 748 A.2d 393, 398 (Del. 2000); see Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 524 (3d Cir. 1997) ("Because [the employee] was an at-will employee, her employer could terminate her employment, for any reason and on any date the employer chose."). We hold — notwithstanding her arguments considered in part III.B. infra — that the heavy presumption that Thompson was an employee at will applies in this case, and this fact is "fatal" to her claim that she possesses a property interest in her continued employment. Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003); see also Bishop v. Wood, 426 U.S. 341, 345 n.8 (1976) (holding that if an

9

employee "held [her] position at the will and pleasure" of the government, this "necessarily establishes that [the employee] had [n]o property interest" (citation omitted)).

Delaware rules — particularly those pertaining to probationary employees — similarly do not support Thompson's claim that she has a legitimate claim of entitlement to her continued employment. The Delaware State Merit Rules (the "Merit Rules") govern state employees. See Del. Code Ann. tit. 29 § 5902 ("The general purpose of this chapter is to establish . . . a system of personnel administration based on merit principles and scientific methods governing the employees of the State."). Delaware law provides that the Merit Rules "shall provide for a period of probation . . . during which period a probationer may be discharged or reduced in class or rank." Id. § 5922(a). Merit Rule 9.2, which governs the probationary period in part, provides that employees "may be dismissed at any time during the initial probationary period" and that, with one exception not applicable here, "probationary employees may not appeal the decision."[3] Rule 9.2 creates a group of employees who may be terminated at any time during the probationary period and "may not appeal the decision" to dismiss them.[4] "Probationary" is thus synonymous with "at-

---

[3] Merit Rule 9.2 creates an exception for violations of Chapter 2, which provides that "[d]iscrimination in any human resource action covered by these rules or Merit system law because of race, color, national origin, sex, religion, age, disability, sexual orientation, gender identity, genetic information or other non-merit factors is prohibited."

[4] Granted, Rule 9.2 exempts violations of Chapter 2 from this general rule. Thompson contends that, taken together, Merit

10

Rules Chapters 9 and 2 create for-cause protection because Chapter 2 prohibits discrimination based on "other non-merit factors" such that probationary employees can only be terminated based on "merit" factors. She also cites Kopicko v. State Dep't of Servs. for Child., Youth & Their Fams., 805 A.2d 877 (Del. 2002) for this proposition. Thompson's argument is unconvincing.

The court in Kopicko did not address the status of probationary employees for the purpose of federal due process protections. Kopicko concerned a probationary state employee who received poor performance reviews during her probationary period and was dismissed. Id. at 877–78. Kopicko filed a lawsuit on the ground that she was dismissed for discriminatory reasons in violation of the Merit Rules, and the court held that if Kopicko believed she was terminated for discriminatory reasons, she could have filed a grievance under Chapter 2. Id. at 878–79. Kopicko merely confirms that a probationary employee may appeal an adverse employment action if the action was based on discrimination.

More generally, it is true that Chapter 2 creates some procedural protection for at-will employees. But this protection does not change the status of at-will employees for the purpose of federal due process. This is because substantive rights and procedural protections are distinct, and protected "'[p]roperty' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." Thomas, 351 F.3d at 113 (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)); see also id. ("The fact that state law may grant procedural protections to an at-will employee does not transform his or her interest in continued employment into a

11

will" under the Merit Rules. See Lord, 748 A.2d at 398. As a result, we hold that Delaware state probationary employees do not have a constitutionally protected property right to continued employment for purposes of federal procedural due process.

We conclude that Thompson had no legitimate claim of entitlement to continued employment under Delaware law and rules as she was terminable at will by DSCYF. She accordingly lacked a protected property interest in her continued employment. See Bishop, 426 U.S. at 346 n.8; cf. Jones v. City of Boston., 752 F.3d 38, 56 (1st Cir. 2014) ("We have previously observed that probationary [state] employees in Massachusetts do not have a property interest in their continued employment."); Wheaton v. Webb-Petett, 931 F.2d 613, 619 (9th Cir. 1991) ("Typically, permanent and classified employees have been held to have property interests, while probationary and nonclassified employees have not." (citation omitted)); Blanton v. Griel Mem'l Psychiatric Hosp., 758 F.2d 1540, 1544 (11th Cir. 1985) ("Because the plaintiff could be discharged 'at the will' of his employer during his probationary period, he had no valid expectation of continued employment during this probationary period.").

2.

We turn to Thompson's claim that her demotion violated her right to procedural due process. Where a

property interest protected by the Due Process Clause."). Chapter 2 does not provide for-cause protection to probationary employees.

plaintiff's "claim of a property interest is based on what [s]he characterizes as [her] demotion," we similarly examine the state law and rules to determine whether she had a "legitimate claim of entitlement to the retention of" her position or rank, as "property interests are created and defined by state law." Clark v. Twp. of Falls, 890 F.2d 611, 617 (3d Cir. 1989); cf. Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008) ("[The plaintiff] defines his asserted property interest as the interest 'in not being suspended without just cause.' To determine whether such an interest exists, we will first look to state law." (citation omitted)). Here, the relevant Delaware statutes and regulations make clear that Thompson did not have a legitimate claim of entitlement to the retention of her duties in a particular position or rank. Delaware law provides that the merit rules "shall provide for a period of probation before appointment or promotion is made complete and during which period a probationer may be discharged or reduced in class or rank." Del. Code Ann. tit. 29 § 5922(a) (emphasis added). Merit Rule 9.2 in turn provides that employees "may be dismissed at any time during the initial probationary period." While the Merit Rules only mention dismissal, the greater adverse employment action (dismissal) includes the lesser (demotion). This is especially true given the language of section 5922(a). We therefore hold that Thompson did not have a property interest in the retention of a particular rank or position during her probationary period.

B.

Thompson raises several arguments in opposition. First, she argues that section 5922 creates an entitlement to continued employment for probationary employees because, read as a whole, it provides that a probationary employee may

13

be discharged or demoted based on unsatisfactory work. Specifically, Thompson notes that section 5922 entitles probationary employees to "receive an appropriate performance report . . . during the probationary period, providing warning of any poor performance," Del. Code Ann. tit. 29, § 5922(a), and that a probationary employee shall be deemed permanent if the employee's services are satisfactory.

Contrary to Thompson's interpretation, section 5922 does not create an entitlement to continued employment for probationary employees. Delaware law presumes that an employee is at-will unless expressly stated. Rizzitiello v. McDonald's Corp., 868 A.2d 825, 830 (Del. 2005). Section 5922 does not expressly provide for-cause protection for probationary employees, and the portions of the statute Thompson points to do not provide for-cause protection. A requirement that probationary employees receive performance reports is not an express statement of for-cause employment. Additionally, section 5922(b), which provides that probationary employees shall be deemed permanent if their services are satisfactory, merely explains how a probationary employee may become a permanent employee; it does not provide that probationary employees may only be demoted or terminated for cause. See Del. Code Ann. tit. 29, § 5922(b). Thus, section 5922 does not create an entitlement to continued employment for probationary employees.[5]

---

[5] Thompson cites Perri v. Aytch, 724 F.2d 362 (3d Cir. 1983), for the proposition that this Court has found a property right in probationary employment. But in Perri, the Pennsylvania regulations governing the probationary period "specifically provided that dismissal during the probationary period shall be 'for just cause only.'" Id. at 365 (citation omitted). The

14

Thompson also argues that Merit Rule 12.1, which provides that "[d]isciplinary measures up to and including dismissal shall be taken only for just cause," applies to probationary employees. But this clause cannot be applicable to the dismissal of probationary employees because, pursuant to Merit Rule 9.2, probationary employees "may be dismissed at any time" and, with the exception of Chapter 2, "may not appeal the decision." Thompson provides no reason why Merit Rule 12 applies to probationary employees, particularly given the contrasting language in Merit Rule 9.2 that explicitly applies to probationary employees.

Thompson next argues that her employment status was not at-will because of an agreement between the parties. Thompson contends that the state maintains a "clear and longstanding policy and practice" to discharge probationary employees only for cause. Thompson Br. 12, 33. Thompson cites as evidence the fact that satisfactory work and merit are at the core of section 5922, that section 5922 requires warning of poor performance, and that the state initially reacted to Porter's reinstatement by assuring Thompson that her job was safe.

A property interest must arise from either the "circumstances of . . . service" or the "mutually explicit understandings that support [the] claim of entitlement to the benefit." Perry v. Sindermann, 408 U.S. 593, 601–02 (1972). But "[t]he Supreme Court has set a high bar for how explicit an understanding must be in order to support a property interest." McKinney v. Univ. of Pittsburgh, 915 F.3d 956, 960

statutes and rules at issue in this case provide no such guarantee.

15

(3d Cir. 2019) (quotation marks omitted). It must be "clear that the expectation was mutual." Id. at 961. When the government has broad discretion to terminate the benefit, or when the scope of the government's discretion is ambiguous, that is "too slender a reed to support the weight of a constitutional right." Tundo v. Cnty of Passaic, 923 F.3d 283, 288 (3d Cir. 2019) (quoting McKinney, 915 F.3d at 963).

The amended complaint does not allege a mutual understanding that Thompson was a for-cause employee. It alleges that Thompson was hired as a probationary employee which, as explained above, essentially means that she was an at-will employee. The defendants took no action to alter this understanding. Any alleged custom and practice maintained by the defendants, even if true, do not amount to an "explicit understanding" of for-cause protection given the plain language of Merit Rule 9.2.

Additionally, Thompson argues that, even if her probationary employment status was at-will, the at-will status was altered under Delaware contract law principles creating exceptions to at-will employment. She points to two possible exceptions to at-will employment: (1) a breach of the implied covenant of good faith and fair dealing; and (2) promissory estoppel. But Delaware's exceptions to at-will employment do not transform at-will employment into for-cause employment. See Thomas, 351 F.3d at 113. In E.I. DuPont de Nemours & Co. v. Pressman, 679 A.2d 436 (Del. 1996), the Delaware Supreme Court made clear that, in the context of the covenant of good faith and fair dealing, "[s]ince an assurance of continued employment is antithetical to at-will employment, no legally cognizable harm arises solely from the termination itself." Id. at 444 (emphasis added). The harm in Pressman

16

derived not from the termination but from the employer's creation of false grounds and manufacturing of a record to establish a fictitious basis for the employee's termination. Id. As a result, the court held that the employee was entitled to recover damages for wrongful termination based on fictitious grounds. See id. at 444–48. The court's holding did not alter the employee's status as an at-will employee. Nor will Pressman transform Thompson's employment to for cause. Indeed, the court determined that "[s]ince indefinite employment is not part of the bargain in an employment contract that does not explicitly so provide, neither party can point to the duty of good faith and fair dealing to support a requirement of good cause for termination." Id. at 449. The court in Lord v. Souder, 748 A.2d 393 (Del. 2000) provided similar analysis for promissory estoppel. While promissory estoppel was a basis of recovery by an at-will employee for wrongful discharge, the court held that "[n]othing about the at-will doctrine suggests that it does not coexist with numerous modifications and exceptions imposed by law, including the law of promissory estoppel." Id. at 399 (quoting Foote v. Simmonds Precision Prods. Co., 613 A.2d 1277, 1280 (Vt. 1992) (emphasis added)). Thus, even if Thompson could establish promissory estoppel or a breach of the implied covenant of good faith and fair dealing, neither alters her status as an at-will employee for the purpose of federal procedural due process. See id.; Pressman, 679 A.2d at 444.

Finally, Thompson argues that the District Court erred in accepting the validity of the defendants' extension of her one-year probationary period. The defendants relied upon an extension request and approval form as part of their motion to dismiss. Thompson contends that, without discovery, there is no way to determine whether the extension request is authentic

17

or whether the defendants submitted the extension request when they claim they did.

This appeal appears to be the first time Thompson directly challenges the authenticity of the extension request and approval. Her amended complaint alleges that "[o]n or about June 5, 2017, [the defendants] . . . applied to have her one year probation extended." App. 26. The amended complaint then alleges that "[b]ecause there was no valid basis for the extension[,] it [was] without force or effect." App. 26 ¶ 32. In her brief in opposition to the defendants' motion to dismiss, Thompson argued that she "must be permitted to discover if [the defendants] knowingly fabricated the basis for [the extension request] and who made the decision to extend." Docket No. 37 at 5. But Thompson did not directly question the authenticity of the extension in her briefing on the motion to dismiss. It was only in her opening appellate brief that Thompson first seriously questioned the authenticity and timeliness of the document, and this argument is therefore forfeited. See Del. Nation v. Pennsylvania, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal.").[6]

---

[6] In any case, Thompson has supplied no reason to doubt the validity of the request for, or grant of, an extension except to argue that it was done without notice. But the Merit Rules do not contain a notice requirement. Merit Rule 9.1 provides that, "[u]pon the [Department of Human Resources] Secretary's approval, probationary periods may be extended." The document submitted by the defendants is a letter request for extension of the probationary period to Human Resources, and it is signed and approved by the Acting Director of the Office of Management and Budget, Human Resources Management.

\* \* \* \* \*

Delaware law and rules provide that probationary state workers may be discharged or reduced in position or rank without cause. We hold that Thompson did not have a constitutionally protected property right in her continued employment or in her retention in a particular position or rank for purposes of federal due process protection.

## IV.

Thompson also challenges the District Court's dismissal of her WPA claim.[7] The court dismissed that claim pursuant to the Eleventh Amendment on the ground that the State of Delaware has not consented to be sued in federal court under the WPA. Thompson argues that the District Court acted prematurely because discovery and a fuller record were necessary to consider this claim. We disagree.

---

As a result, even if we were to consider this argument, we would have no reason to doubt the document's validity or authenticity.

[7] It is not clear from the amended complaint whether Thompson also asserts her WPA claim against the individual defendants. To the extent she does, it must be dismissed. Delaware courts have held that individual state officials and employees cannot be sued under the WPA. See, e.g., Postell v. Eggers, No. Civ. 06C-11-021 (JTV), 2008 WL 134830, at *5 (Del. Super. Ct. Jan. 15, 2008) (citing Tomei v. Sharp, 902 A.2d 757, 767 (Del. Super. Ct. 2006), aff'd, 918 A.2d 1171 (Del. 2007)).

Our Constitution created a system of "'dual sovereignty between the States and the Federal Government,'" and "[a]n important feature of this sovereignty is state sovereign immunity." Lombardo v. Pa., Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008) (quoting Gregory v. Ashcroft, 501 U.S. 452, 457 (1991)). The Eleventh Amendment of the Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In Hans v. Louisiana, 134 U.S. 1, 10 (1890), the Supreme Court extended the Eleventh Amendment's reach to suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court. States thus "possess immunity from suit in the federal courts, also known as Eleventh Amendment immunity." Lombardo, 540 F.3d at 194–95.

A State's immunity from suit is not absolute. Congress may abrogate a State's sovereign immunity "in the exercise of its power to enforce the Fourteenth Amendment," and a State may consent to suit by making a clear declaration that it intends to submit itself to federal court jurisdiction.[8] Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); see also Waterfront Comm'n of N.Y. Harbor v. Governor of N.J., 961 F.3d 234, 238 (3d Cir. 2020). But a state's consent to be sued in its own state courts, without more, does not constitute an intention to submit itself to suit in federal

_____

[8] A State may also waive its immunity from suit by invoking federal court jurisdiction voluntarily, such as by removing the case to federal court. Lombardo, 540 F.3d at 196.

20

court.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.9 (1984).  This is because a state's sovereign immunity encompasses both whether the state may be sued and where it may be sued.  Id. at 99; Lombardo, 540 F.3d at 195.  As a result, in order for a state statute to constitute consent to submit itself to federal jurisdiction, "it must specify the State's intention to subject itself to suit in federal court."  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 306 (1990) (emphasis in original).

The WPA does not state a clear intention by Delaware to subject itself to suit in federal court.  Rather, the WPA allows for actions to be "brought in Superior Court in the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides or has their principal place of business."  Del. Code Ann. tit. 19, § 1704(b).  The WPA explicitly waives immunity for suits brought in state court, not federal court.  Eleventh Amendment immunity bars Thompson's WPA claim, so we will affirm the District Court's dismissal of Count IX.

V.

For the foregoing reasons, we will affirm the District Court's order dismissing Thompson's amended complaint.

21